2005 UT 45

**STATE of Utah, Plaintiff and Appellee,**

v.

**Travis Javier CRUZ, Defendant and Appellant.**

**No. 20020735.**

Supreme Court of Utah.

July 22, 2005.

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Katherine Bernards–Goodman, Salt Lake City, for plaintiff.

Kent R. Hart, Salt Lake City, for defendant.

PARRISH, Justice:

¶ 1 Travis Javier Cruz ("Cruz") was convicted of operation of a clandestine drug laboratory and possession of a controlled substance with intent to distribute. He asks us to reverse his convictions and to remand his case to the trial court for a new trial. For the reasons set forth below, we affirm.

## BACKGROUND

¶ 2 On September 27, 2000, firefighters responded to reports of a possible house fire in one of South Jordan's residential neighborhoods. South Jordan police officers accompanied the firefighters to perform traffic control duties. Upon arriving at the house, the firefighters saw white smoke spilling out from the eaves and main door of the garage. After unsuccessfully trying to enter the garage through the main door, the firefighters broke down a side door and discovered that the garage itself was full of white smoke. The firefighters entered with breathing equipment in place and, as they made their way through the smoke, Cruz emerged, claiming that there was nothing wrong and that the firefighters could leave. Despite Cruz's assurances, the firefighters asked Cruz to open the main garage door.

¶ 3 Cruz complied. The resulting improvement in visibility allowed the firefighters to make a troubling discovery: two hot plates, plugged in and emitting the same type of smoke that had once filled the garage; a five-gallon bucket of acid; and a venting system made of kitty litter and white flex tubing. After removing their masks, the firefighters also noted a distinctive smell. From their observations, the firefighters suspected that they had stumbled upon a meth lab.

¶ 4 The firefighters shared their suspicions with the police officers who were present. In response to the firefighters' concerns, the officers interviewed Cruz, obtained his personal information, and used that information to determine whether Cruz had any outstanding warrants. The officers also obtained a search warrant for the house. The subsequent search of the house was, to say the least, fruitful, and the officers seized a massive amount of drug-related paraphernalia. They also seized a number of items connecting Cruz to the house.

¶ 5 Cruz denied owning the house, however, and another man present at the scene admitted living there. Some of the seized evidence was consistent with Cruz's denial.

For example, police seized a motor vehicle certificate of title, which listed Cruz as the owner of the named vehicle and indicated an address for Cruz that was different from that of the searched premises.

¶ 6 The discovery of the meth lab and the subsequent seizure of the aforementioned property gave rise to two proceedings. First, the State brought a civil action against Cruz, seeking forfeiture of the seized property (the "civil forfeiture action"). In October 2000, Cruz filed a verified answer in the civil forfeiture action in which he admitted owning most of the seized property. Second, on April 10, 2001, the State issued an arrest warrant for Cruz and charged him with operation of a clandestine drug lab, a first degree felony, and possession of a controlled substance with intent to distribute, a second degree felony. Cruz pleaded not guilty, and the criminal case against him proceeded to trial.

¶ 7 On the first day of trial, after the jury had been selected and sworn in, the trial court distributed to the jurors a set of what it termed "preliminary" jury instructions. Those instructions were in hard copy form, and the jurors retained them throughout the trial. Before the first witness took the stand, the court read the first ten instructions to the jury. Those instructions addressed rules applicable to recesses; the roles of the judge, jury, and lawyers; the structure of the trial; the presumption of innocence; and general rules applicable to evidence. In particular, instruction five noted that "[t]he defendant is presumed to be innocent of the charge." The court concluded its recitation of instructions one through ten at approximately 12:20 p.m. on the first day of trial.

¶ 8 Later that day, Cruz's attorney stated that he had a "concern" that two jurors had discussed the case with one another. Apparently, it had been brought to the attention of Cruz's attorney that one juror had speculated to another juror as to why the first juror had been selected for the jury when members of her family had been arrested and imprisoned for drug-related offenses. Cruz's attorney advised the trial judge that his "only concern" regarding this interchange was that the jurors "were discussing the case somewhat, looking over the information they had been given, and discussing their personal views on the case," in violation of the trial court's instruction that the jurors refrain from discussing the case with each other.

¶ 9 The trial court responded by characterizing the jurors' comments as mere "speculati[on] about the reasons why they were not the targets of peremptory challenges" and "speculati[on] about certain evaluations that the lawyers may have made about them and about the way that they might approach this case." According to the trial court, that speculation suggested neither that the jurors were biased nor that they were improperly discussing the case.

¶ 10 When Cruz's attorney raised his "concern" about the jurors, the trial court had not yet read preliminary instructions eleven through eighteen to the jury. It did so at approximately 9:00 a.m. on the second day of trial. By that time, four witnesses had finished testifying and a fifth was in the process of doing so.

¶ 11 That second batch of preliminary instructions contained four instructions pertinent to this appeal. Instruction fifteen, entitled "Who Is Responsible to Convince the Jury," read:

> The prosecution has the burden of proof. It is the one making the accusations in this case. The defendant is not required to prove innocence—you must start by assuming it. According to our law, the defendant is presumed to be innocent unless proven guilty beyond a reasonable doubt. This is a humane provision of the law intended to guard against the danger of an innocent person being unjustly punished.

Instruction sixteen, entitled "How Convinced Must the Jury Be Before Deciding the Defendant Is Guilty," read:

> Before you can give up your assumption the defendant is innocent, you must be convinced that the defendant's guilt has been proven beyond a reasonable doubt. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind and convinces the understanding of reason-

able persons who are bound to act conscientiously upon it.

Instruction seventeen, entitled "What Is a Reasonable Doubt," read:

> A reasonable doubt is one based upon reason and common sense rather than speculation, supposition, emotion or sympathy. It is the kind of doubt that would make a reasonable person hesitate to act. It must be real and not merely imaginary. It is such as would be retained by reasonable men and women after a full and impartial consideration of all the evidence, and must arise from the evidence or lack of evidence in the case.

Finally, instruction eighteen, entitled "How to Evaluate Doubt," read:

> If after such full and impartial consideration some possible doubt exists, you must determine whether such doubt is reasonable in light of all the evidence. Ask yourselves if the doubt is consistent with reason and common sense. The law does not require that the evidence dispel all possible or conceivable doubt, but rather that it dispel all reasonable doubt. That is what is meant by the phrase "proof beyond a reasonable doubt."

¶ 12 At about 11:00 a.m. on the third day of trial, after the parties had completed their presentation of the evidence, the court gave the jury the remaining twenty-five instructions. Those instructions dealt predominantly with procedures for jury deliberation and the substantive elements of the crimes with which Cruz was charged. The instructions enumerating the elements of Cruz's alleged offenses noted that the jury must find each element proven beyond a reasonable doubt. Cruz objected to neither the substance nor the timing of these instructions. Instead, he merely objected to the lack of a lesser included offense instruction.

¶ 13 After the court finished reading the remaining instructions, the attorneys for the parties delivered their closing arguments, and the jury left to deliberate. The jury returned with convictions on both of the counts with which Cruz was charged. Cruz appeals. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(i) (2002).

## ANALYSIS

¶ 14 Cruz identifies three reasons why he should receive a new trial. First, he argues that the trial court's reasonable doubt instructions were constitutionally infirm because they failed to conform to the standards articulated in *State v. Robertson*, 932 P.2d 1219 (Utah 1997), *overruled on other grounds by State v. Weeks*, 2002 UT 98, 61 P.3d 1000, and because the trial court failed to reread all of the jury instructions at the close of evidence. Second, Cruz argues that he properly raised an allegation of jury bias and that the trial court erred in failing to investigate that allegation. Third, Cruz argues that his attorney rendered ineffective assistance by counseling Cruz to falsely admit ownership of the seized property in the civil forfeiture action and, then, by not withdrawing as counsel during the criminal trial. Cruz contends that his attorney's withdrawal would have enabled his attorney to take the stand and testify as to the falsity of the admissions Cruz made in the civil forfeiture action with respect to his ownership of the seized property. Cruz also asserts that his attorney was ineffective in failing to object to the content and timing of the jury instructions. We address each of Cruz's arguments in the order presented.

### I. CRUZ'S ATTACKS ON THE JURY INSTRUCTIONS

¶ 15 Cruz argues that he is entitled to a new trial because the trial court's jury instructions were constitutionally infirm. Specifically, Cruz argues that the reasonable doubt instructions fell short of the standard we enunciated in *Robertson*, 932 P.2d 1219. He also argues that the trial court erred in failing to reread its preliminary jury instructions at the close of the evidence.[1] We address each argument in turn.

---

1. In his opening brief, Cruz asserted that the trial court entirely failed to read instructions eleven through eighteen, thereby abdicating its responsibility to orally instruct the jury. However, Cruz abandoned that argument in the face of the State's brief, which correctly pointed out that the trial court read instructions eleven through eighteen on the second day of trial.

## A. The Reasonable Doubt Instructions

 ¶ 16 We first address Cruz's argument that the trial court's reasonable doubt instructions fell short of the *Robertson* standard and were therefore improper. Generally, "[w]hether a jury instruction correctly states the law presents a question of law which we review for correctness." *State v. Houskeeper*, 2002 UT 118, ¶ 11, 62 P.3d 444. Cruz admits, however, that he never objected to the substance of the trial court's reasonable doubt instructions. That omission would normally render the instructions reviewable for plain error, or manifest injustice, rather than for correctness. *State v. Hamilton*, 2003 UT 22, ¶ 54, 70 P.3d 111; *see also State v. Casey*, 2003 UT 55, ¶ 40, 82 P.3d 1106 ("[I]n most circumstances the term 'manifest injustice' is synonymous with the 'plain error' standard . . . ." (internal quotations omitted)). To establish plain error, Cruz would be required to demonstrate that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined." *Id.* at ¶ 41 (internal quotations omitted).

 ¶ 17 Erroneous reasonable doubt instructions, however, give rise to structural errors, *Sullivan v. Louisiana*, 508 U.S. 275, 281–82, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which are different than garden-variety trial errors, *see Griego v. People*, 19 P.3d 1, 7 (Colo.2001). Structural errors are flaws in the " 'framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *State v. Russell*, 917 P.2d 557, 560 (Utah Ct.App.1996) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Because they affect the very framework of the

trial, structural errors are not subject to plain error analysis. *Griego*, 19 P.3d at 7. Specifically, instead of requiring an aggrieved defendant to prove prejudice, as a plain error analysis requires, a structural error analysis presumes prejudice. *State v. Arguelles*, 2003 UT 1, ¶ 94 n. 23, 63 P.3d 731. Accordingly, under normal circumstances, we would review the trial court's reasonable doubt instructions for correctness, *Houskeeper*, 2002 UT 118 at ¶ 11, 62 P.3d 444, and remand for a new trial if we found those instructions erroneous.

¶ 18 The fact that Cruz never objected to the substance of the jury instructions, though, presents an additional wrinkle. In *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the United States Supreme Court held that, where the defendant failed to properly object at trial, rule 52(b) of the Federal Rules of Criminal Procedure mandated plain error review, as described in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), even if the trial court's error was structural in nature. *Johnson*, 520 U.S. at 464–67, 117 S.Ct. 1544; *see United States v. Fazal–Ur–Raheman–Fazal*, 355 F.3d 40, 47 n. 5 (1st Cir.2004) (noting that, in *Johnson*, "the Supreme Court assumed that an error was 'structural' but nevertheless held that, because the defendant had failed to preserve his objection, 'plain error' appellate review applied").[2] Under that rule, a defendant claiming constitutional error who did not object at trial may only argue plain error or ineffective assistance of counsel on appeal and thus must prove prejudice, even if the constitutional error claimed on appeal is structural in nature. Other state courts follow a similar rule. *See, e.g., State v. Garcia*, 358 N.C. 382, 597 S.E.2d 724, 745 (2004) ("Structural error, no less than other constitutional error, should be preserved at trial."). Here, though, we need not decide whether

---

**2.** A plain error analysis under federal jurisprudence differs slightly from the analysis under our jurisprudence. Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed.R.Crim.P. 52(b). In *Olano*, the Supreme Court held that federal appellate courts may reverse on issues not raised at trial if an

error was committed that was plain and that affected substantial rights. 507 U.S. at 732, 113 S.Ct. 1770. Even when those factors are present, however, the court may exercise its discretion to correct the error only if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotations omitted).

Cruz's failure to object to the reasonable doubt instructions forecloses his claim of structural error because we conclude that the trial court's reasonable doubt instructions were not erroneous—the first prong in both plain error and structural error analyses.

¶ 19 In *Robertson*, we recognized that the test for measuring the validity of reasonable doubt instructions, which had been articulated by Justice Stewart in his dissent in *State v. Ireland*, 773 P.2d 1375, 1381 (Utah 1989) (Stewart, J., dissenting), had been adopted by a majority of this court in *State v. Johnson*, 774 P.2d 1141, 1147–49 (Utah 1989). *Robertson*, 932 P.2d at 1232. Under that test, reasonable doubt instructions were required to meet the following three requirements:

> First, the instruction should specifically state that the State's proof must obviate all reasonable doubt. Second, the instruction should not state that a reasonable doubt is one which would govern or control a person in the more weighty affairs of life, as such an instruction tends to trivialize the decision of whether to convict. Third, it is inappropriate to instruct that a reasonable doubt is not merely a possibility, although it is permissible to instruct that a fanciful or wholly speculative possibility ought not to defeat proof beyond a reasonable doubt.

*Id.* (internal quotations and citations omitted). Cruz contends that instructions fifteen through eighteen—the trial court's reasonable doubt instructions—ran afoul of the first *Robertson* requirement in that they failed to affirmatively "state that the State's proof must obviate all reasonable doubt."

¶ 20 The State invites us to reject the *Robertson* test in favor of the standard adopted by the United States Supreme Court in *Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). In *Victor*, the Court stated that

> so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the in-

structions [must] correctly convey the concept of reasonable doubt to the jury.

*Id.* at 5, 114 S.Ct. 1239 (alteration in original) (internal quotations and citations omitted). Under *Victor*, reasonable doubt instructions are unconstitutional if they allow " 'a reasonable juror . . . [to] interpret[ ] the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.' " *Id.* at 6, 114 S.Ct. 1239 (quoting *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n. 4, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)). Conversely, so long as the reasonable doubt instructions, "taken as a whole, . . . correctly convey[ ] the concept of reasonable doubt to the jury," they pass constitutional muster. *Id.* at 22, 112 S.Ct. 475 (internal quotations omitted).

¶ 21 In *State v. Reyes*, 2005 UT 33, 116 P.3d 305, which was argued the same day as this appeal, the State also urged us to overrule *Robertson*. We accepted that invitation, and pursuant to our opinion in *Reyes*, the *Robertson* test is no longer in force. *Id.* at ¶¶ 19, 30, 34. We now adhere instead to the *Victor* test for assessing the validity of reasonable doubt instructions. Simply put, we need only ask whether the instructions, taken as a whole, correctly communicate the principle of reasonable doubt, namely, that a defendant cannot be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

¶ 22 We hold that the jury instructions given during Cruz's trial, taken as a whole, adequately conveyed to the jury the concept of reasonable doubt. Those instructions provided a clear and accurate definition of proof beyond a reasonable doubt. They also correctly stated that the prosecution carried the burden of proof beyond a reasonable doubt. In sum, they conveyed all of the information required by *Victor*—that "the court instruct[ ] the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt," 511 U.S. at 5, 114 S.Ct. 1239—and they did so in a clear and specific

manner. Accordingly, the trial court's reasonable doubt instructions were not erroneous and do not warrant a new trial.

### B. The Timing of the Jury Instructions

■ ¶ 23 Having disposed of Cruz's attack on the substance of the reasonable doubt instructions, we now turn to his claim that the trial court erred by failing to reread its preliminary instructions at the close of the evidence. As was the case with his argument regarding the sufficiency of the reasonable doubt instructions, Cruz failed to preserve this issue. Unlike the challenge to the reasonable doubt instructions, however, this issue does not implicate the structural error doctrine.

■ ¶ 24 In *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718, the United States Supreme Court observed that it had "found such errors only in a very limited class of cases." *Id.* at 468, 117 S.Ct. 1544. It then listed the instances in which it had found structural errors. *Id.* While the list included erroneous reasonable doubt instructions, it did not include erroneous timing of jury instructions. *Id.* at 468–69, 117 S.Ct. 1544. Moreover, Cruz has provided us no compelling reason to add to that list. We therefore review the timing of the trial court's jury instructions for plain error, which will require Cruz to prove that the trial court committed an error that was both obvious and prejudicial. *See Casey,* 2003 UT 55 at ¶ 40, 82 P.3d 1106.

¶ 25 Cruz's argument, as we see it, has both an abstract and a specific component. In the abstract, he argues that reading all of the jury instructions at the close of evidence crystallizes relevant issues and better equips juries to properly resolve cases. In the context of this particular case, Cruz argues that the evidence linking him to the house where

the meth lab was seized was hotly contested and that rereading the jury instructions at the close of evidence would have made it clear to the jury that there was insufficient evidence to convict.[3] He asserts that the trial court's failure to reread the instructions was prejudicial and denied him due process.

¶ 26 We also addressed this issue in *Reyes.* There, we held that Utah Rules of Criminal Procedure 17 and 19 gave trial courts "discretion to determine the appropriate instructions to deliver to the jury at the close of evidence." *Reyes,* 2005 UT 33 at ¶¶ 45, 49. We accordingly declined to require that trial courts reread preliminary instructions at the close of the evidence in every case, recognizing instead that a jury's understanding may be aided by allowing trial courts, in their discretion, to tailor the timing of particular jury instructions to the individual circumstances of a particular case. *Id.* at ¶¶ 44–45. Requiring a trial court to reread introductory instructions that have become irrelevant by the close of evidence (like those describing jurors' ability to take notes during trial), or even requiring a trial court to reread instructions pertaining to "vital rights," *id.* at ¶¶ 44, 46, when those instructions have recently been given, may "dilute [the jury's] attention to critical substantive and procedural guidance present in other instructions," *id.* at ¶ 44. In short, repeating every instruction at the close of all of the evidence may not necessarily produce better-informed jurors, and our trial courts should have the discretion to decide when rereading instructions will yield diminishing returns.

■ ¶ 27 A trial court's decision not to reread its preliminary instructions at the close of evidence is erroneous only if it reflects an abuse of discretion. We have defined an "abuse of discretion" generally as a judicial act occurring beyond "the range of

---

**3.** Because the State sought to connect Cruz to the seized meth lab on a theory of constructive possession, Cruz asserts that the State was required "to prove that there was a sufficient nexus between the accused and the drug to permit an inference that the accused had both the power and the intent to exercise dominion and control over the drug." *State v. Fox,* 709 P.2d 316, 319 (Utah 1985). That burden of proof, Cruz contends, required the State to proffer "facts which

permit the inference that the accused intended to use the drugs as his or her own," *id.,* not simply to prove that the accused had access to the drugs. Given that high burden of proof and the conflicting evidence connecting Cruz to the house in which the meth lab was seized, Cruz asserts that the trial court's failure to fully reinstruct the jury at the close of evidence was prejudicial, as it produced an incorrect guilty verdict.

discretion allowed for the particular act under review," *State v. Mead,* 2001 UT 58, ¶ 33 n. 4, 27 P.3d 1115, but we have not yet had the opportunity to delineate the applicable "range of discretion" for the timing of jury instructions. Nevertheless, *Reyes* is again instructive.

¶ 28 In *Reyes,* we found that two facts justified the trial court's decision not to reread its preliminary instructions at the close of evidence. First, we noted that "less than twenty-four hours separated the trial court's reading of the preliminary instructions from the conclusion of the evidence." *Reyes,* 2005 UT 33 at ¶ 49. Second, we recognized that "the jury was provided with a written copy of every instruction." *Id.* Given those facts, we concluded that the trial court's decision "was well within the bounds of discretion afforded by rule 17 and rule 19 [of the Utah Rules of Criminal Procedure]." *Id.* In other words, declining to reread preliminary instructions after a one-day trial in which the jurors were provided with written copies of all the instructions fell within the "range of discretion" trial courts may exercise in timing their jury instructions.

¶ 29 The facts in this case do not differ materially from those in *Reyes.* The trial court finished reading the first ten preliminary instructions to the jury at 12:20 p.m. on the first day of trial. Instructions 11 through 18 were read on the second day of trial. By 12:48 p.m. on the third day of trial, the jury had gone to deliberate, having received all the instructions. In other words, the trial court gave all the instructions in just over forty-eight hours. While that is twice as long as the relevant period in *Reyes,* it is still sufficiently short to allow the jury to retain and recall all the instructions it received throughout the course of the trial. Moreover, as in *Reyes,* each juror had a written copy of the preliminary instructions.[4] Consequently, we hold that the trial court did not abuse its discretion in declining to reread all the instructions at the close of evidence. Accordingly, Cruz cannot establish any error,

let alone plain error, with regard to the timing of the jury instructions.

## II. CRUZ'S ALLEGATION OF JUROR BIAS

¶ 30 We now turn to Cruz's allegation of juror bias. As we noted in our recital of the facts, shortly after the beginning of the trial, Cruz, through his attorney, expressed a concern that the jurors had discussed the case with one another in violation of the trial court's instruction. He stated:

My concern was[,] it was brought to my attention that a couple of the jurors were conversing with each other in the elevator on the way up, back from lunch, and were discussing—yeah, they were speculating as to why they had been picked, and were discussing one of the juror's I believe family, I don't know, mother or—a couple family members had been arrested and incarcerated for drugs. The other juror speculated to her, "I assume maybe they picked you because they thought you would be sympathetic." She said, "I hope they are not counting on that, because I had to endure that," something like that. The other one said, "Well, I would be sympathetic, because I didn't really have to deal with the issue. My mother dealt with it." Something to that effect. *My concern is they were discussing the case somewhat, looking over the information they had been given, and discussing their personal views on the case. That's my only concern. The Court had ordered them not to discuss the case with each other, talk with each other.*

(Emphasis added.)

¶ 31 The trial court responded by concluding that the jurors were merely "speculating about the reasons why they were not the targets of peremptory challenges" and "about certain evaluations that the lawyers may have made about them and about the way that they might approach this case." Thereafter, Cruz failed to pursue the matter further.

---

4. The record suggests that the jurors had only the eighteen preliminary instructions and a few others with them throughout the trial, not all the instructions that would eventually be given. We think that this is immaterial, however, because Cruz contends that it is the first eighteen "preliminary" instructions that the trial court should have repeated to the jury.

¶ 32 On appeal, Cruz contends that he properly raised an allegation of juror bias and that the trial court should have investigated that allegation and dismissed the jurors. He asserts that the trial court's failure to do so prejudiced him and warrants a new trial. The State asserts that Cruz never properly alleged juror bias and has accordingly waived that claim on appeal. We agree with the State.

¶ 33 "As a general rule, claims not raised before the trial court may not be raised on appeal." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. A party cannot circumvent that rule by "mere[ly] mention[ing] ... an issue without introducing supporting evidence or relevant legal authority"; such a "mere mention" "does not preserve that issue for appeal." *State v. Brown*, 856 P.2d 358, 361 (Utah Ct.App.1993) (internal quotations omitted). The preservation requirement is based on the premise that, "in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *Holgate*, 2000 UT 74 at ¶ 11, 10 P.3d 346 (internal quotations omitted). Accordingly, an objection "must at least be raised to a level of consciousness such that the trial [court] can consider it." *Brown*, 856 P.2d at 361 (internal quotations omitted).

¶ 34 Here, Cruz explicitly stated that his "only concern" was that the jurors were discussing the case with each other in violation of the court's order to the contrary. The concern he raised had nothing to do with the substance of the jurors' comments to one another or with the degree of bias, if any, those comments reflected. Indeed, Cruz's attorney never even mentioned the word "bias." We conclude that Cruz's objection is properly characterized as an objection to the jurors' conversation, not an objection based upon alleged bias.

¶ 35 We acknowledge that the trial court mentioned bias in responding to Cruz's stated concern regarding the jurors' conversation. After concluding that the jurors were simply speculating as to why they had been selected for service, the trial court offered its opinion that nothing about those speculations "suggests bias, nor does it suggest that they were improperly discussing the case." Cruz contends that the trial court's statement demonstrates that he raised the issue of bias "to a level of consciousness such that the trial [court could] consider it," *id.* (internal quotations omitted), thereby satisfying the preservation requirement.

¶ 36 We disagree. The fact that the trial court mentioned the term "bias" in ruling on Cruz's objection regarding the jurors' conversation does not establish that the trial court was actually presented with an objection based on bias. Neither does it establish that the objection, if made at all, was sufficiently explicit to raise the bias issue "to a level of consciousness such that the trial [court could] consider it." [5] *Id.* In fact, the record reflects that Cruz failed to pursue the bias issue even after the court mentioned it gratuitously. Cruz never identified the jurors who were allegedly biased, never requested any investigation into the matter, never asked that the jurors be disqualified, and never presented any pertinent legal argument or authority. In short, Cruz failed to preserve the issue of jury bias in the trial court and therefore cannot raise it on appeal.[6] *See id.*

5. In *State v. Taylor*, 2005 UT 40, 116 P.3d 360, we held that the issue of continuance was properly preserved, even though the appellant did not ask for a continuance at trial, because, "without invitation, the trial court turned away the option of continuing the trial to permit [the appellant] to adjust his defense to meet the amended date." *Id.* at ¶ 7. That situation differs from the one presented in this case. In *Taylor*, the trial court effectively ruled on the merits of a motion for continuance even though the appellant did not actually make such a motion. In contrast, the trial court in this case mentioned bias only to clarify the narrow scope of Cruz's objection. It did not prospectively rule on a potential motion to strike jurors based on bias.

6. We do not review the trial court's resolution of the juror bias issue for plain error, as we did the timing of the trial court's jury instructions, because Cruz has neither claimed plain error nor briefed that issue. *See Bernat v. Allphin*, 2005 UT 1, ¶ 38, 106 P.3d 707 (declining to address an inadequately briefed issue).

## III. CRUZ'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 37 Finally, Cruz contends that he is entitled to a new trial because his attorney rendered ineffective assistance by (1) advising Cruz to falsely admit ownership of most of the property seized from the house; (2) not withdrawing as Cruz's counsel during his criminal trial in the face of a conflict of interest; and (3) failing to object to the timing and content of the jury instructions.

¶ 38 To establish ineffective assistance of counsel, "a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Myers v. State,* 2004 UT 31, ¶ 20, 94 P.3d 211 (internal quotations omitted). We have recognized a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (internal quotations omitted). Accordingly, an aggrieved defendant bears the burden of demonstrating that the complained-of conduct was not "sound trial strategy." *Id.* (internal quotations omitted). We apply these requirements to each of Cruz's claims of ineffective assistance.

### A. Advice to Admit Ownership of Seized Property

¶ 39 We turn first to Cruz's argument that his attorney rendered ineffective assistance by counseling him to falsely admit ownership of the property seized at the house. Cruz's attorney in the proceedings below was the same attorney who represented him in the earlier civil forfeiture action. Cruz argues that his attorney advised him to falsely admit ownership of the seized property in the civil forfeiture action in order to protect the property interests of those who actually owned the seized property. According to Cruz, his admission of ownership did not serve his

interests and, in fact, resulted in his conviction because it was used by the State to connect Cruz to the house where the meth lab was located.

¶ 40 We disagree that Cruz's attorney rendered ineffective assistance in this instance. We see nothing in the record to indicate that the performance of Cruz's attorney fell "below an objective standard of reasonableness." *Myers,* 2004 UT 31 at ¶ 20, 94 P.3d 211 (internal quotations omitted).[7] To support his claim that his attorney advised him to lie, Cruz relies on the following exchange between his attorney and Chad Platt, the State attorney who handled the civil forfeiture proceeding:

[CRUZ'S ATTORNEY]: So the response I filed for Mr. Cruz covers all the property, because he is the only claimant you listed, correct? In the answer, we say not all the property is his, correct?

[MR. PLATT]: In your verified answer?

[CRUZ'S ATTORNEY]: Right.

[MR. PLATT]: Right. I assume that, because you say "most." I would assume you are saying some isn't.

. . . .

[CRUZ'S ATTORNEY]: ... If Mr. Cruz didn't file an answer to protect everybody's rights that you didn't list, what would happen to that property? If somebody didn't file an answer to the property that was theirs, or claim it, it would be forfeited to your organization?

[MR. PLATT]: If nobody answered to the complaint, right. And after a period of time goes by, nobody answers, then at that point what our office will do is file a motion for default judgment saying nobody has answered.

¶ 41 While these comments could be read to suggest that Cruz's attorney advised Cruz to claim ownership of seized property that was not his, that is not the only plausible interpretation. It is also plausible that Cruz admitted ownership of the property because it actually did belong to him and he wanted

---

7. On February 18, 2003, Cruz filed a motion pursuant to rule 23B of the Utah Rules of Appellate Procedure, requesting a remand to the district court for an evidentiary hearing and entry of findings of fact and conclusions of law with respect to his ineffective assistance of counsel claim. That motion was denied.

to protect it from forfeiture despite the potential repercussions of that strategy in any subsequent criminal proceeding. Accordingly, we conclude that Cruz has failed to establish that his attorney's "performance was so deficient as to fall below an objective standard of reasonableness." *Id.* (internal quotations omitted).

■ ¶ 42 Moreover, even if Cruz could establish that his attorney performed deficiently by advising him to admit ownership of the seized property in the civil forfeiture action, it would not help him here. A defendant may claim ineffective assistance of counsel only if he had a right to counsel in the first place, *Wainwright v. Torna,* 455 U.S. 586, 587–88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (per curiam), and Cruz had no right to counsel in the civil forfeiture action.

■ ¶ 43 The United States Constitution contains two sources of a right to counsel: the Fifth and Sixth Amendments. *See Michigan v. Jackson,* 475 U.S. 625, 629, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). The United States Supreme Court has noted that "[t]he Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings, and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." *Davis v. United States,* 512 U.S. 452, 456–57, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (citation omitted). In contrast, the Fifth Amendment right to counsel attaches during custodial interrogation, *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), or " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way,' " *Yarborough v. Alvarado,* 541 U.S. 652, 661, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (quoting *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)).

■ ¶ 44 Cruz admitted ownership of the seized property in the verified answer that he filed in the civil forfeiture action. That answer was filed in October 2000, six months before any criminal proceedings were initiated against him. Cruz consequently cannot claim a Sixth Amendment right to counsel. Moreover, because there is no allegation that Cruz was in custody when he filed his verified answer, he cannot claim a right to counsel under the Fifth Amendment. Without a right to counsel, Cruz cannot claim ineffective assistance of counsel. *Wainwright,* 455 U.S. at 587–88, 102 S.Ct. 1300.

### B. Failure to Withdraw as Counsel

■ ¶ 45 We next address Cruz's argument that his attorney should have withdrawn from representing him in the criminal proceedings below. Specifically, Cruz asserts that, because the Utah Rules of Professional Conduct prohibit an attorney from acting as an advocate at a trial in which the attorney may be called as a material witness, Utah R. Prof'l Conduct 3.7(a), his attorney should have withdrawn as Cruz's counsel in the criminal proceeding so that he could testify that he told Cruz to falsely claim ownership of the seized property. Cruz further asserts that his attorney refused to withdraw because his attorney wanted to avoid being charged with perjury for advising Cruz to admit to ownership of property that he did not own. Cruz argues that this situation created a conflict of interest that prevented his attorney from effectively representing him. *See State v. Lovell,* 1999 UT 40, ¶ 22, 984 P.2d 382 (noting that the Sixth Amendment guarantees the right to "conflict-free representation").

¶ 46 We are unpersuaded because, as we have noted, there is no definitive indication in the record suggesting that Cruz's attorney actually advised him to lie. Absent evidence of that crucial fact, Cruz's attorney had no obligation to withdraw or to take the stand in the criminal trial. In short, Cruz's argument that his attorney had a conflict of interest is without factual basis.

### C. Failure to Object to the Content and Timing of the Jury Instructions

¶ 47 We finally turn to Cruz's claim that his attorney rendered ineffective assistance by failing to object to the content and timing of the jury instructions. This claim is severely undermined by our conclusion that the trial court did not err in either the sub-

stantive content of its reasonable doubt instructions or the timing of those instructions. Indeed, in light of those conclusions, Cruz cannot establish that his attorney was deficient in failing to object or that the objections, if made, would have yielded a "reasonable probability" of a different result. *See Myers,* 2004 UT 31 at ¶ 20, 94 P.3d 211. We therefore reject Cruz's claim that his attorney rendered ineffective assistance by failing to object to the content and timing of the jury instructions.

## CONCLUSION

¶ 48 We affirm Cruz's convictions. We reject Cruz's challenge to both the content and the timing of the jury instructions. In *Reyes,* we rejected the notion that reasonable doubt jury instructions must strictly conform to the requirements set forth in *Robertson,* and we held that the timing of jury instructions is a matter left to the sound discretion of the trial court. We decline to consider Cruz's claim of jury bias because he did not raise it in the trial court. Finally, Cruz's ·claim of ineffective assistance of counsel fails because he has not successfully proven that his attorney advised him to falsely admit ownership of the seized property, he has failed to demonstrate that counsel's failure to object to the jury instructions constituted deficient performance and, even had he done so, he has failed to demonstrate a "reasonable probability" that objecting to the ·instructions would have yielded a different result at trial. We accordingly affirm.

¶ 49 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT and Judge DUTSON concur in Justice PARRISH's opinion.

¶ 50 Having disqualified himself, Justice NEHRING does not participate herein; District Judge ROGER S. DUTSON sat.