THORNE, Judge
(dissenting):
41 34 I respectfully dissent from the majority's decision determining that the trial court was adequately apprised of Defendant's complaints before it denied Defendant's motion for substitution of counsel. The trial court's failure to further inquire into and fully inform Defendant of the cireumstances pertaining to the conflict of interest, are flaws affecting the framework within which the trial *661 proceeded that are equivalent to structural error. See State v. Cruz, 2005 UT 45, ¶ 17, 122 P.3d 548 ("Structural errors are flaws in the framework within which the trial proceeds, rather than simply an error in the trial process itself." (citation and internal quotation marks omitted)). As a result, I would conclude that the trial court erred when it failed to conduct a proper inquiry into the conflict of interest issues.
135 "During an attorney-client relationship, an attorney owes a client a fiduciary duty of loyalty, which requires the attorney to exercise impeccable honesty, fair dealing, and fidelity in dealings with the client." Roderick v. Ricks, 2002 UT 84, 182, 54 P.3d 1119 (citation and internal quotation marks omitted). "At a minimum, an attorney's duty of loyalty to his or her client requires the attorney to refrain from acting as an advocate against the client, even in a case unrelated to the cause for which the attorney is retained." State v. Holland, 876 P.2d 357, 359-60 (Utah 1994). "The right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client." Id. at 359 (additional emphasis omitted) (citation and internal quotation marks omitted). Likewise, the rules forbidding an attorney with an undisclosed conflict of interest from representing a client, suggest that the duty of loyalty essentially requires attorneys who may have divided loyalty, and thereby adversely affect the client, to refrain from undertaking such representation. CJ Restatement (Third) of The Law Governing Lawyers § 121 (2000) ("Unless all affected clients ... consent ..., a lawyer may not represent a client if the representation would involve a conflict of interest. A conflict of interest is involved if there is a substantial risk that the lawyer's representation of the elient would be materially and adversely affected by the lawyer's own interests ...." (emphasis added)); see also id. § 121 emt. b. ("The prohibition against lawyer conflicts of interest reflects several competing concerns. First, the law seeks to assure clients that their lawyers will represent them with undivided loyalty."). Indeed, "[the duty of loyalty is so essential to the proper functioning of the judicial system that its faithful discharge is mandated not only by the Rules of Professional Conduct, but also, in criminal cases by the Sixth Amendment right of a criminal defendant to the effective assistance of counsel." Holland, 876 P.2d at 359. "The faithful discharge of that duty is a vital factor both in uncovering and making clear to a court the truth on which a just decision depends and in protecting the rights of persons charged with a crime." Id.
136 The facts of this case are, in my experience, both unique and troubling. On the first day of trial, one defense counsel conducted what the trial judge considered to be an improper impeachment effort.[5] Later that evening, without Defendant's knowledge, both of his defense counsel eng1aged in ex parte communications with the district court's presiding judge regarding their feelings of intimidation by Defendant and their concerns about their own ability to adequately represent Defendant. The presiding judge then communicated defense counsel's conflict of interest concerns to the trial judge. The next morning before trial, the trial judge conducted an in-chambers discussion, without including Defendant, regarding the events of the previous evening and defense counsel's feelings of intimidation. The trial court then provided defense counsel with an opportunity to discuss the issue with one another and with the prosecution. The prosecutor spoke with defense counsel about the safety measures that the State could take to alleviate any concerns they may have and offered different safety seenarios.[6]
T 37 Thereafter, the court informed Defendant that his defense counsel had disclosed to *662 the trial court that they were intimidated by him and that nonetheless the court was proceeding with trial. Specifically, the trial court told Defendant,
I've been informed by your counsel that they feel intimidated by you, whether rightfully or wrongfully they feel intimidated in a way and have disclosed that intimidation and that has perhaps caused them to do things that they would not otherwise do as officers of the Court. I'm thinking of yesterday's impeachment, for example.... I don't know if that's a fair example or not. But that is an appropriate disclosure to place on the record.
We're going forward with this trial. Okay?
After a brief discussion on the impeachment effort, Defendant stated that he was going to file a request for substitute counsel. In support of his request, Defendant initially expressed his concerns about defense counsel in terms of his dissatisfaction with their trial strategy. The trial court reminded Defendant that the court had previously denied Defendant's motion for new trial on that basis. After further discussion about the impeachment effort, Defendant reiterated his request for new trial counsel, and the following relevant exchange occurred:
THE DEFENDANT: I have a right, you know, to a fair trial. And I don't believe I'm being represented to the fullest like they say-like to be represented. So, I have, you know, problem in (inaudible.)
THE COURT: You filed a new motion. Filed a motion for new counsel which was denied. Are you looking for new counsel now?
THE DEFENDANT: Yeah.
THE COURT: And what would the basis be?
THE DEFENDANT: Ineffective counsel.
THE COURT: Well, based upon what?
THE DEFENDANT: My lawyers, they feel intimidated by me, so, therefore, we have a conflict of interest. So therefore, they feel they are afraid of me or whatever their complaints would be. So, therefore, there's a conflict between me and the lawyers. So, therefore, I don't see how we can, you know, communicate without me feeling that there's a fear between me and them.
(Emphasis added.)
1 38 The events of this case present several troubling conflict of interest issues pertaining to whether defense counsel's actions violated their duty of loyalty to their client and whether the trial court properly performed its duty of inquiry. The first task is to consider whether defense counsel breached their duty of loyalty and then consider whether the trial court properly inquired into the potential conflict of interest issues.
I. Defense Counsel's Duty of Loyalty
139 First, it is apparent from the record that the loyalties of Defendant's attorneys were indeed compromised as demonstrated by defense counsel's actions related to their claims of intimidation by Defendant.[7] Here, defense counsel were burdened by a conflict between Defendant's interests and their apparent concerns about their own safety. Instead of addressing their conflict of interest concerns with Defendant, defense counsel *663 took actions without Defendant's knowledge and contrary to Defendant's interests by engaging in various ex parte communications with the presiding judge, the trial judge, and the prosecutor. In so doing, defense counsel appear to have violated their duty to keep their client's confidence and properly inform their client about their actions. See Utah R. Profi Conduct 1.4(a)(5) ("A lawyer shall: ... consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law."); see also Restatement (Third) of The Law Governing Lawyers § 20 (2000) (providing that when an issue of conflict arises, the lawyer must consult with the client and proceed in the best interest of the client).
[[ 40 Because defense counsel failed to consult with Defendant, or even inform him of their actions on the conflict of interest issue, Defendant was uninformed and unprepared to present his request for substitute counsel. Based on defense counsel's actions, I conclude that counsel's personal interests diverted their efforts away from Defendant's interest and may well have impaired their abilities to represent Defendant, thereby violating their duty of loyalty to Defendant.
II. The Trial Court's Duty of Inquiry
41 Second, onee the trial court was informed about the potential conflict of interest between defense counsel and Defendant, the court had a duty to inquire into the matter with both counsel and Defendant. The duty of inquiry required the trial court to
make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints and to apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution or even to such an extent that his or her Sixth Amendment right would be violated but for substitution.
State v. Vessey, 967 P.2d 960, 962 (Utah Ct.App.1998) (citation and internal quotation marks omitted). Here, the trial court did not conduct a proper inquiry with defense counsel regarding their conflict of interest claim during the initial in-chambers discussion of the matter, nor did the court inquire with Defendant about his relationship with his counsel after disclosure of the potential conflict. Without such an inquiry the trial court was unable to assess the situation and determine whether an actual conflict of interest existed.
A. Trial Court's Duty To Inquire Into Defense Counsel's Conflict of Interest Claim
T42 In this case, the trial court merely conducted perfunctory questioning about the potential conflict of interest with defense counsel. During the in-chambers discussion, defense counsel expressed concerns about their ability to adequately and zealously represent Defendant given their claims of intimidation. In addressing defense counsel's concern, the trial court did not inquire about the acts causing counsel's claims of intimidation. Instead, the court reminded defense counsel of their duty to "adequately and zealously . represent [Defendant]," and asked directed questions which were not sufficient to uncover or remedy the potential conflict of interest. In particular, the trial court engaged in the following colloquy:
THE COURT: It's your duty [to] adequately and zealously ... represent [Defendant]. And it sounds to me, you correct me if I am wrong, it's not that you are foregoing legitimate cross-examination, you are not foregoing the-and I don't want you to answer this in any way that would invade the integrity of the attorney/client privilege or work product, that it's not that you are foregoing good stuff, it's that perhaps his intimidation has led you to do things that would otherwise be against your professional judgment.
[DEFENSE COUNSEL]: That's aceu-rate, your Honor.
A similar colloquy occurred again after Defendant requested substitute counsel, whereby the trial court asked one defense counsel, "[Dlo you believe that you can vigorously represent this Defendant?" and, "[Is any of this going to affect your ability to act as a zealous advocate?" Defense counsel re *664 sponded, "Yes, your Honor, I can," and, "No, your Honor, I'm still ready to go forward." [8]
€{48 Neither discussion fulfilled the trial court's duty to inquire into the circumstances of the potential conflict of interest with counsel and ensure that defense counsel could pursue their client's best interest. The trial court's inquiry into defense counsel's ability to represent their client was deficient and in many ways similar to cases of failed attempts to properly rehabilitate a juror after issues of bias have been raised. See State v. Wach, 2001 UT 85, 1383, 24 P.3d 948 ("It is not enough if a juror believes that he or she can be impartial and fair. Indeed, this court has previously noted that [a] statement made by a juror that she intends to be fair and impartial loses much of its meaning in light of other testimony and facts which suggest a bias." (citation and internal quotation marks omitted)). Personal interests of defense counsel "that are inconsistent with those of a client might significantly limit the lawyer's ability to pursue the client's interest." Restatement (Third) of The Law Governing Lawyers $ 125, emt. b. (2000). In this case, the trial court properly explored neither defense counsel's personal interests, nor the factual basis for the apparent conflict or their ability to represent Defendant.
B. Trial Court's Duty To Disclose the Potential Conflict Claim and Inquire Into the Matter with Defendant
{44 Similarly, the trial court conducted perfunctory questioning about the potential conflict of interest with Defendant. When the trial court learned of defense counsel's actions, and certainly onee Defendant conveyed renewed dissatisfaction with his counsel and a request to change attorneys, the trial court was required to conduct a meaningful inquiry into the potential conflict with Defendant. Instead of making non-suggestive efforts to determine the nature of the conflict and the relationship between defense counsel and Defendant, the trial court asked very direct questions and did not explore the issue with Defendant related to a potential break down in communication based on defense counsel's feelings of intimidation. Then, after declaring that no conflict existed the trial court denied Defendant's renewed request for substitute counsel. For instance, after Defendant renewed his substitute counsel request, the court merely inquired of defense counsel whether they believed that they could vigorously represent Defendant. See supra 142. Such questions were both rehabilitative and directive, and did not explore the potential conflict. The trial court's limited inquiry was not sufficient to fulfill the trial court's duty to "make some reasonable, non-suggestive efforts to determine the nature of the defendant's complaints." State w. Vessey, 967 P.24 960, 962 (Utah Ct.App. 1998) (emphasis added) (citation and internal quotation marks omitted); see also id. ("Even when the trial judge suspects that the defendant's requests are disingenuous and designed solely to manipulate the judicial process and to delay the trial, perfunctory questioning is not sufficient." (citation and internal quotation marks omitted)).
{45 Compounding the deficiency in the trial court's conflict of interest inquiry is the fact that neither defense counsel nor the trial court informed Defendant of the factual circumstances pertinent to the conflict of interest issue. Defendant was not informed about the other actions defense counsel took based on their feelings of intimidation, ie., their ex parte communication with the presiding judge and defense counsel's disclosures and subsequent arrangement with the prosecution for additional security measures. Nor was Defendant informed about defense counsel's own concerns about their ability to adequately represent Defendant. Defense counsel had informed the court that "the bigger concern is just our ability to continue to adequately and zealously represent [Defendant] in trial." Without such knowledge about the conflict of interest claim, Defendant would not have been able to, even had the trial court conducted a proper inquiry into the potential conflict of interest issue, have a meaningfully discussion with the court on the matter. Thus, the trial court's duty of inquiry failed both by insufficiently informing *665 Defendant of the pertinent facts and declining to conduct a thorough inquiry into the conflict of interest issue with Defendant.
4 46 In sum, although Defendant was given an opportunity to identify conflict of counsel issues, because he was not present for most of the relevant discussions he was not adequately informed of the facts, and particularly the breadth of the potential conflict, sufficient to provide a meaningful explanation of the conflict Moreover, the trial judge, who was aware of the factual cireum-stances related to the conflict of interest, neither adequately apprised Defendant of the cireumstances related to the conflict issue nor conducted a proper follow-up inquiry into the conflict. Thereafter, the trial court did not fulfill its duty to "apprise itself of the facts necessary to determine whether the defendant's relationship with his or her appointed attorney has deteriorated to the point that sound discretion requires substitution." See Vessey, 967 P.2d at 962 (citation and internal quotation marks omitted). As a result, I would conclude that the trial court erred in not conducting a more meaningful inquiry into the conflict of interest issue and would reverse and remand as a substantial and structural error, without a requirement to demonstrate prejudice. See generally State v. Cruz, 2005 UT 45, 17, 122 P.8d 543 ("[A] structural error analysis presumes prejudice.").

. The prosecutor objected to defense counsel's questioning and the trial court chose to admonish defense counsel in front of the jury stating that she had conducted an incorrect impeachment. The court then excused the jury and further addressed defense counsel on the improper impeachment, stating "[Ylou know better than that, right?" She responded, "Right."

. Defense counsel apparently accepted the prosecutor's assistance, stating to the court that although they were worried about their own safety, "[the State is going to help [us] out. We'll be fine."

. The majority concludes that "defense counsel continued to zealously represent Defendant, despite Defendant's complaints and apparent efforts at intimidation." Supra 126. However, there is nothing in the record that establishes that Defendant actively intimidated defense counsel. There is no evidence that Defendant, directly or indirectly, threatened counsel either verbally or with physical gestures. Indeed, defense counsel never articulated any action taken by Defendant that caused counsel to feel "a sense of intimidation." The trial court stated that defense counsel "couldn't really articulate what it was, but that there was a sense of being compromised in the ability to exercise a judgment they normally exercise." The only reference to Defendant's behavior was during an in-chambers discussion, wherein the presiding judge mentioned that defense counsel "indicated that there was a sense of intimidation and staring down episode and we did not discuss what was behind that, just had to do with counsel be given a response there was the stare down." The circumstances surrounding Defendant's staring are unknown. Defendant may have been simply spacing out, thinking, or keeping a steady gaze as a means of controlling himself, In any case, without more information, the stare down incident does not amount to an act of intimidation.

. The trial court asked a similar question of defense co-counsel and received a response that she too was able to act as a zealous advocate for Defendant.