STATE of Utah, Plaintiff and Respondent,

v.

**Mark Leslie LARSEN, Defendant and Appellant.**

No. 15408.

Supreme Court of Utah.

April 19, 1978.

Michael D. Esplin of Utah County Legal Defender Assoc., Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from a conviction of automobile homicide under Section 76–5–

207[1] by a jury in the District Court for Utah County.[2]

The evidence shows that on June 19, 1976, defendant, while driving his car south on Interstate 15 in Utah County, in excess of 100 miles an hour, collided with a second car, driven by Andrew Mjelnek, traveling in the same direction. Both cars overturned. All four passengers in the Mjelnek car, Mr. Mjelnek, his pregnant wife, Sandra, and their two children sustained injuries, but there were no fatalities other than the fetus.

Officers, who had been pursing defendant because of his excessive speed, arrived on the scene immediately after the collision. They testified that defendant had a strong odor of alcohol about him. Evidence produced at the trial showed defendant's alcoholic blood content to be 0.13 percent.

At the time of the incident, Mrs. Mjelnek had been pregnant for approximately 26 weeks. A projected date for the birth was October 3, 1976. The mother had felt fetal movement shortly before the collision, but felt no such movement afterwards. The entire Mjelnek family was taken to a hospital and treated for injuries. A medical doctor, a certified gynecologist, examined Mrs. Mjelnek and determined that the unborn baby was dead. As soon as the mother recovered sufficiently from her injuries, labor was induced and the baby was stillborn. The Doctor testified that the fetus weighed approximately one and a half pounds and that a fetus of that size had approximately 25 percent chance of survival outside the womb. It was the Doctor's opinion that a traumatic blow could have been the cause of death of the infant.

At the close of the State's evidence, defendant moved to dismiss the charges against him on the ground that the State had failed to prove a prima facie case since the term "another" in Section 76–5–207,

infra, could not be interpreted to include an unborn fetus. The motion was denied, and the issue was submitted to the jury, which brought back a verdict of guilty.

■ The basic question on this appeal is whether the Legislature intended to include an unborn fetus within the definition of "another" in drafting Section 76–5–207, which provides:

(1) Criminal homicide constitutes automobile homicide if the actor, while under the influence of intoxicating liquor, a controlled substance, or any drug, to a degree which renders the actor incapable of safely driving a vehicle, causes the death of another by operating a motor vehicle in a negligent manner.

"Another" is not defined in the statute, though "person" is defined in Section 76–1–601 as follows:

(5) "Person" means an individual, public or private corporation, government, partnership, or unincorporated association.

The code contains no other definitions pertinent here.

The question of when a fetus becomes a human being for the purposes of the criminal law has plagued the courts for centuries. The courts have found it particularly difficult to determine. Feticide was never considered homicide under the common law, but only some lesser crime. The prosecutor at common law had the burden of proving that the child was born alive before a charge of homicide would lie. The history of the development of the common law in this area has been discussed at length by Mr. Justice Blackmun in the case of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and will not be reiterated here. See also *Keeler v. Superior Court,* 2 Cal.3d 619, 87 Cal.Rptr. 481, 470 P.2d 617 (1970), in which the majority opinion and Justice

---

1. All references to statutory sections are to the Utah Code Annotated, 1953, containing the Utah Criminal Code enacted by Chapter 196 of the Utah Session Laws of 1973, as amended (1977 Edition).

.2. The information charged that "on or about the 19th day of June, A.D., 1976, at Utah County, State of Utah, the said Mark Leslie Larsen, while under the influence of intoxicating liquor, to a degree rendering him incapable of safely driving a motor vehicle, did while operating a motor vehicle in a negligent manner, cause the death of Baby Mjelnek."

Burke's dissenting opinion highlight the difficulties of these questions.

 Against this background, the State urges this Court to find that the time has come to recognize that a fetus is a human being under the homicide statutes, though the Legislature has not specifically stated that it is to be so considered. In the absence of statute, the terms "person", "human being", "another" (in the context of "person") do not include an unborn fetus for purposes of the crime of homicide. After the California Supreme Court in *Keeler*, supra, found that the term "human being" did not include a viable but unborn fetus,[3] the California Legislature passed a feticide statute. If the Utah Legislature wishes to pass this type of statute, it should do so in clear and specific language.

Our decision rests, of course, upon what we perceive the law to be in this matter. We are, however, in no way insulated from feelings which acknowledge the anguish of Mr. and Mrs. Mjelnek and the scope of the overwhelming tragedy that has transpired.

Reversed. No costs awarded.

ELLETT, C. J., and CROCKETT, MAUGHAN, and HALL, JJ., concur.

---

**3.** In *Keeler*, medical testimony showed that the fetus had a 75 to 96 percent chance of survival; in this case, the testimony revealed only a 25 percent chance of survival.