2004 UT 31

**Calvin Shane MYERS, Plaintiff and Appellant,**

v.

**STATE of Utah and James Smith, Warden of the Utah State Prison, in his official capacity, Defendants and Appellees.**

No. 20010955.

Supreme Court of Utah.

April 20, 2004.

---

3. We express no opinion as to whether the Act, in fact, authorizes extraterritorial condemnation.

Steven B. Wall, Scott H. York, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Christopher D. Ballard, Asst. Att'y Gen., Salt Lake City, for defendants.

DURRANT, Associate Chief Justice:

¶ 1 In 1996, Calvin Shane Myers pleaded guilty to one count of aggravated murder for the stabbing death of Irene Christensen and her unborn child. Myers was sentenced to

life imprisonment. On July 28, 2000, Myers filed a petition for post-conviction relief, arguing ineffective assistance of counsel and various jurisdictional and constitutional defects in the trial court's original order and commitment. The post-conviction court denied the petition. We affirm.

## BACKGROUND

¶ 2 On the afternoon of December 18, 1994, a snowmobiler discovered the frozen body of Irene Christensen near the reservoir at Rockport State Park. An investigation revealed that Christensen had been stabbed or sliced at least twelve times in the chest and neck; the trauma to the neck was so severe that she was nearly decapitated. A subsequent autopsy revealed that Christensen was sixteen to eighteen weeks pregnant at the time of her death.

¶ 3 On December 22, 1994, the State charged Calvin Shane Myers, the victim's former boyfriend, with two counts of aggravated murder pursuant to section 76–5–202(1)(b) of the Utah Code. Count one charged Myers for the death of Christensen, aggravated by the killing of Christensen's unborn child in the same criminal episode. Count two charged Myers for the death of the unborn child, aggravated by the killing of Christensen.

¶ 4 After the preliminary hearing, Myers filed a motion to reduce or dismiss charges, arguing that the death of the unborn child could not serve as an aggravating factor or as an independent count because *Roe v. Wade* and its progeny prevented the State from defining a nonviable fetus as a "person." The magistrate denied the motion and bound Myers over for trial.

¶ 5 In the trial court, Myers filed a motion to (1) preclude application of Utah Code section 76–5–202 to the killing of a fetus, or, in the alternative, to the killing of a nonviable fetus; (2) preclude the killing of the nonviable fetus as an aggravating factor in count I; and (3) dismiss either count I or count II of the information. This motion was based on essentially the same grounds as those raised by Myers in his previous motion to reduce or dismiss charges. The trial court denied this motion.

¶ 6 Following the advice of counsel, Myers chose not to appeal these dismissals and instead entered an unconditional guilty plea to one count of aggravated murder. Myers admitted that on December 3, 1994, he killed Irene Christensen by stabbing her several times, and that prior to stabbing her, he knew that she was pregnant. As part of the plea agreement, the court dismissed the second count of aggravated murder and the State agreed not to pursue the death penalty or a life sentence without the possibility of parole. On February 6, 1996, the trial court sentenced Myers to life imprisonment with the possibility of parole. Myers did not withdraw his guilty plea, nor did he seek a direct appeal from any of the rulings.

¶ 7 In July of 2000, Myers filed a petition for post-conviction relief in this court. We referred the petition to the Third District Court in Summit County pursuant to rule 65C(b) of the Utah Rules of Civil Procedure. Myers raised five issues in his petition:

1. Is a sixteen-week-old, nonviable fetus a "person" as the term is used in Utah Code section 76–5–202(1)(b);

2. Did the State meet its burden of proving the corpus delicti of the charged crime by clear and convincing evidence;

3. Was the trial court without jurisdiction to commit Myers to life imprisonment for violating Utah Code section 76–5–202(1)(b) where the undisputed facts would not support a conviction for the charged offense;

4. Did the failure of Myers's defense counsel to object to the entry of plea or to appeal the conviction amount to "ineffective assistance of counsel" sufficient to justify post-conviction relief; and

5. Is the State of Utah improperly and unconstitutionally detaining Myers.

¶ 8 The post-conviction court dismissed Myers's petition, finding that the first three issues were barred under the Post–Conviction Remedies Act because they were previously raised at trial. The court also found that Myers's counsel was not ineffective. Myers appeals the denial of his petition for post-conviction relief. We have jurisdiction

pursuant to Utah Code sections 78–2–2(3)(j) and 78–2a–3(2)(f) (2002).

## STANDARD OF REVIEW

 ¶ 9 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Rudolph v. Galetka*, 2002 UT 7, ¶ 4, 43 P.3d 467. Further, "we survey the record in the light most favorable to the findings and judgment; and we will not reverse if there is a reasonable basis therein to support the trial court's refusal to be convinced that the writ should be granted." *Medina v. Cook*, 779 P.2d 658, 658 (Utah 1989) (quotation omitted).

## ANALYSIS

### I. ISSUES BARRED BY THE POST-CONVICTION REMEDIES ACT

 ¶ 10 The State argues that the majority of the issues raised in Myers's post-conviction petition "were identical to [his] claims at trial." Thus, the State asserts, the post-conviction court was correct in holding that Myers's claims, aside from the claim of ineffective assistance of counsel, are procedurally barred under the Post–Conviction Remedies Act. *See* Utah Code Ann. §§ 78–35a–101 to –304 (2002). We agree.

 ¶ 11 Section 78–35a–106 of the Utah Code sets forth the circumstances under which a person is precluded from seeking post-conviction relief. This section provides, in relevant part, that "[a] person is not eligible for relief under this chapter on any ground that ... was raised or addressed at trial or on appeal [or] could have been but was not raised at trial or on appeal." *Id.* § 78–35a–106(1)(b), (c). This is true because a petition for post-conviction relief "is a collateral attack of a conviction and/or sentence and is not a substitute for direct appellate review." *Carter v. Galetka*, 2001 UT 96, ¶ 6, 44 P.3d 626 (citing *Gardner v. Holden*, 888 P.2d 608, 613 (Utah 1994)). "As a result, issues raised and disposed of on direct appeal of a conviction or sentence cannot be raised again in a petition for habeas corpus." *Id.*

(citing *Gardner*, 888 P.2d at 613). In addition, "issues that could and should have been raised on direct appeal, but were not, may not be raised for the first time in a habeas corpus proceeding, absent unusual circumstances." *Id.; see also Thomas v. State*, 2002 UT 128, ¶ 6, 63 P.3d 672 (denying post-conviction relief where various issues were raised or could have been raised at trial or on appeal). "This rule applies to all claims, including constitutional questions." *Rudolph v. Galetka*, 2002 UT 7, ¶ 5, 43 P.3d 467 (citing *Julian v. State*, 966 P.2d 249, 258 (Utah 1998)).

¶ 12 A review of the arguments raised by Myers in the trial court indicates that those arguments are very similar, if not identical, to the issues raised in Myers's post-conviction petition. Prior to his plea and sentencing in the trial court, Myers filed a motion to (1) preclude application of Utah Code section 76–5–202 to the killing of a fetus, or, in the alternative, to the killing of a nonviable fetus; (2) preclude the killing of the nonviable fetus as an aggravating factor in count I; and (3) dismiss either count I or count II of the information. In support of his motion, Myers argued that in *State v. Larsen*, 578 P.2d 1280 (Utah 1978), this court invited the legislature to more clearly define feticide by statute if it wanted to criminalize the killing of a fetus. *Id.* at 1282. Myers argued that after *Larsen*, the Utah Legislature amended the criminal homicide statute to include the killing of an "unborn child" but did not modify the language in the aggravated murder statute, which refers only to the killing of "two or more persons." *See* Utah Code Ann. §§ 76–5–201(1)(a),–202(1)(b) (1999). Therefore, Myers reasoned, the legislature did not clearly indicate an intent to include "unborn child" within the definition of a "person" for purposes of the aggravated murder statute, and "person" could not be construed to mean "unborn child" by implication. In addition, Myers contended that, in any event, a statute criminalizing the death of a fetus would be unconstitutional based on common law principles and under *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and its progeny. Myers argued that, at a minimum, *Roe* required proof that the fetus had

reached the stage of "viability" before one could be held liable for its death.

¶ 13 After considering these arguments, the trial court found them to be without merit and dismissed Myers's motion. Myers decided not to appeal this decision, but instead struck a plea bargain with the State under which he entered an unconditional guilty plea to one count of aggravated murder. The trial court accepted Myers's plea and sentenced him accordingly.

¶ 14 In his petition for post-conviction relief, the first three issues raised by Myers, though framed somewhat differently, rest on arguments identical to those detailed above. "At the heart of this petition," Myers stated, "is the question of whether the Utah State Legislature intended a sixteen-week-old, nonviable fetus to be considered a 'person' for the purpose serving [sic] as an aggravating factor necessary to apply [s]ection 76–5–202(1)(b) of the Utah Criminal Code." In his supporting memorandum, Myers again relied upon *Larsen* and *Roe* and its progeny, in arguing that the aggravated murder statute was either insufficiently clear or wholly unconstitutional and, thus, could not apply to him. The arguments detailed in the post-conviction petition are nearly identical to those raised before the trial court. Myers has alleged no unusual circumstances that would justify this court in addressing these issues again in a post-conviction proceeding.[1]

■ ¶ 15 Despite the procedural bar, Myers endeavors to have this court address the issues raised in his post-conviction petition by arguing that the alleged defects in the aggravated murder statute divested the trial court of jurisdiction over the matter. Though his reasoning is somewhat convoluted, the substance of Myers's argument appears to be that, because the aggravated murder statute is either insufficiently clear under *Larsen* or wholly unconstitutional under *Roe*, the statute cannot be the basis for criminalizing the killing of a nonviable fetus. Thus, Myers argues, it was impossible for the State to prosecute him for aggravated murder, which requires the killing of two or more "persons," because the State could not satisfy its "corpus delicti burden" by producing evidence that at least two "persons" were killed. Therefore, Myers concludes, there was no basis on which to initiate charges, and the trial court lacked jurisdiction to accept his guilty plea.

■ ¶ 16 While it is true that "the right to make . . . an objection [to the jurisdiction of the court] is never waived" and could therefore potentially be raised in a post-conviction proceeding, *see James v. Galetka*, 965 P.2d 567, 570 (Utah Ct.App.1998), Myers has failed to state any legitimate jurisdictional defect. "A court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority." *In re Estate of McLaughlin*, 754 P.2d 679, 681–82 (Utah Ct. App.1988) (citing Restatement (Second) of Judgments § 11 (1982)). The Utah Code provides that "[t]he district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." Utah Code Ann. § 78–3–4(1) (2002). The ruling challenged by Myers occurred in a criminal case, which is certainly the type of case over which the trial court generally has jurisdiction.

■ ¶ 17 In considering Myers's motion, the trial court determined that a fetus was a "person" for purposes of the aggravated murder statute, and, therefore, the State appropriately prosecuted Myers under that statute. "A judgment is not void merely because it is erroneous," and "[a] judgment incorrectly interpreting a rule of law does not divest the court of jurisdiction over the sub-

---

1. In addition to the above arguments, Myers indistinctly references the separate, but very similar, argument that the aggravated murder statute is unconstitutionally vague. The State contends that this claim is barred either because Myers did not raise it in the proceedings on his petition in the post-conviction court and, thus, did not preserve it for appeal, or because he waived the argument by pleading guilty to the crime. We need not address these contentions, however, as it appears that Myers's vagueness claim would, in any event, be barred under the Post–Conviction Remedies Act, because it is closely related to those arguments raised before the trial court. Hence, this argument is one that either was or could have been raised at trial or on appeal, *see* Utah Code Ann. § 78–35a–106(1)(b), (c), and is likewise barred.

ject matter of the proceeding." *In re McLaughlin,* 754 P.2d at 682. At most, Myers is claiming that the trial court's decision constituted an "erroneous application of the law." *See id.* To hold that a court is divested of subject matter jurisdiction because of an allegedly incorrect legal interpretation borders on the nonsensical and would allow a substantial circumvention of the present framework with respect to post-conviction claims.

¶ 18 Thus, Myers has failed to state any basis upon which this court could entertain the issues raised in his post-conviction petition, which were substantially similar to those claims already raised before and addressed by the trial court prior to Myers's plea and sentencing. If Myers felt that he was denied relief, he should have taken the dismissal of his prior motions up on direct appeal. *See James,* 965 P.2d at 574 ("If defendant was denied relief at that time, he could have taken a direct appeal."). Therefore, the post-conviction court was correct in holding that the issues raised in Myers's petition, aside from the issue of ineffective assistance of counsel, are procedurally barred under the Post–Conviction Remedies Act.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 19 Myers also asserts in his post-conviction petition that his trial counsel was ineffective in advising him to enter a plea rather than appealing the trial court's denial of his motions. Myers argues that "it is ineffective assistance *per se* for defense counsel to permit and encourage [him] to suffer a prosecution and penalty for a capital offense when the statute underlying the offense is either inapplicable or ambiguous." Further, he argues that "[i]t is not competent or effective assistance of counsel to know of a substantial question as to the applicability of the statute with which the [defendant] is charged and to know that the proper resolution of that issue determines whether the death penalty applies, and then to do nothing."

¶ 20 To prevail on an ineffective assistance of counsel claim, " 'a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different.' " *Wickham v. Galetka,* 2002 UT 72, ¶ 19, 61 P.3d 978 (quoting *State v. Smith,* 909 P.2d 236, 243 (Utah 1995)); *see also Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In making this evaluation, the court must "indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Templin,* 805 P.2d 182, 186 (Utah 1990) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052) (internal quotations and citations omitted).

¶ 21 In this case, the actions by trial counsel that Myers complains of simply do not provide a basis for an ineffective assistance of counsel claim. In accepting the plea bargain, Myers's counsel guaranteed that Myers would not face the death penalty or life in prison without the possibility of parole. The State correctly points out that "[c]ertainly [Myers] could have appealed [the trial court's] rulings by either: (1) seeking an interlocutory appeal; (2) entering a conditional plea to the two aggravated murder charges that reserved his right to appeal the issue; or (3) proceeding with trial and then pursuing a direct appeal." The State observes that "[e]ach option, however, posed a substantial risk that [Myers] could receive two death sentences."

¶ 22 Even had counsel appealed, there was certainly no guarantee, as Myers suggests, that Myers would have prevailed on his constitutional arguments. Indeed, at the time, there were no cases on point in Utah, and other jurisdictions were split on the issue of whether a State could criminalize the killing of a nonviable fetus. Consequently, it is likely that counsel made a "tactical decision not to pursue a constitutional challenge to the ... statute." *Rudolph v. Galetka,* 2002 UT 7, ¶ 10, 43 P.3d 467 (finding counsel not ineffective where "[s]he may well have made

the tactical decision not to pursue a constitutional challenge to the burglary statute because this court endows legislative enactments with a strong presumption of validity and does not declare them unconstitutional unless there is no real basis upon which they can be construed as conforming to constitutional requirements." (citing *State v. DeBooy,* 2000 UT 32, ¶ 28, 996 P.2d 546)).

¶ 23 Moreover, given our recent opinion in *State v. MacGuire,* 2004 UT 4, 84 P.3d 1171, it is clear that Myers was not prejudiced by counsel's actions. In *MacGuire,* we held that a "person" under the aggravated murder statute includes an "unborn child," that the term "unborn child" plainly encompasses a human being at any stage of development in utero, and that such a determination does not offend the constitution. *Id.* at ¶ 32. In light of this decision, counsel's advice that Myers take the plea bargain offered by the State was prescient and certainly could not be considered ineffective assistance.

## CONCLUSION

¶ 24 The majority of the issues raised in Myers's petition for post-conviction relief are barred under the Post–Conviction Remedies Act, which disallows claims in post-conviction proceedings that were raised or could have been raised at trial or on appeal. Myers's post-conviction arguments are substantially similar to those raised in his motions before the trial court prior to his plea and sentencing and therefore cannot be addressed by this court in a post-conviction proceeding. Myers asserts no unusual circumstances, or any other legitimate basis, which would justify this court in addressing these arguments. Further, Myers fails to state a claim for ineffective assistance of counsel.

¶ 25 We therefore affirm the denial of Myers's petition for post-conviction relief.

¶ 26 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.