IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| In the interest of A.S.A., a person under eighteen years of age. | ) ) ) | PER CURIAM DECISION |
| _____ | ) | Case No. 20120186-CA |
| | ) | |
| A.A.A., | ) | |
| | ) | F I L E D |
| Appellant, | ) | (May 24, 2012) |
| | ) | |
| v. | ) | 2012 UT App 151 |
| | ) | |
| P.M. and V.M., | ) | |
| | ) | |
| Appellees. | ) | |

-----

Second District Juvenile, Farmington Department, 1007693
The Honorable J. Mark Andrus

Attorneys:      Jonathan G. Jemming, Salt Lake City, for Appellant
F. Kevin Bond and Budge W. Call, Salt Lake City, for Appellees
Martha Pierce, Salt Lake City, Guardian ad Litem

-----

Before Judges McHugh, Voros, and Orme.

¶1      A.A.A. (Mother) appeals the juvenile court's orders maintaining permanent custody and guardianship of A.S.A. with P.M. and V.M. (Grandparents), and denying Mother's post-judgment motions. We affirm.

¶2      Mother first asserts that the juvenile court lacked subject matter jurisdiction. "A court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court

derives its authority." *Myers v. State*, 2004 UT 31, ¶ 16, 94 P.3d 211. Juvenile courts have exclusive jurisdiction over proceedings related to abuse, neglect, dependency, and the termination of parental rights in those child welfare matters. *See* Utah Code Ann. § 78A-6-103(1)(c), (g) (2008). Grandparents initiated this case by filing a petition to terminate Mother's parental rights based on allegations of abandonment and neglect, matters within the exclusive statutory jurisdiction of the juvenile courts. *See id.* Accordingly, the juvenile court had subject matter jurisdiction over this case, even if the termination trial resulted in a resolution by stipulation rather than the termination of Mother's parental rights.

¶3     Second, Mother asserts that the juvenile court erred because it did not recognize her parental presumption and require Grandparents to rebut that presumption. *See Hutchison v. Hutchison*, 649 P.2d 38, 40 (Utah 1982). However, Mother lost her parental presumption when she stipulated to Grandparents having guardianship and custody of A.S.A. at the termination trial. "The parental presumption is lost where a parent . . . has previously lost custody of a child." *In re K.F.*, 2009 UT 4, ¶ 68, 201 P.3d 985. Accordingly, Mother's voluntary transfer of custody in a child welfare proceeding extinguished her parental presumption. *See id.* ¶ 65. Furthermore, the parental presumption generally does not apply in child welfare proceedings. *See id.* ¶ 69. "In such cases, the petition alone is sufficient to overcome the parental presumption for the purposes of adjudicating the allegations in the petition." *Id.* The current action was initiated by a petition to terminate Mother's parental rights, which on its own negates the parental presumption because the core issue is whether Mother is fit to be a parent. Accordingly, both the nature of this case and Mother's stipulation to transfer custody operated to extinguish any parental presumption Mother may have had at one time.

¶4     Mother next asserts that the juvenile court applied an incorrect standard in determining that A.S.A. could not be safely returned to Mother's custody. Pursuant to the stipulation, Mother undertook the equivalent of a reunification service plan in an effort to attain the skills required to be a competent parent for A.S.A. When a parent pursues reunification efforts, the juvenile court's inquiry at the statutorily required permanency hearing is specific: the juvenile court shall determine whether the child "may safely be returned to the custody" of the child's parent. Utah Code Ann. § 78A-6-314(2)(a). Additionally, "[i]f the court finds, by a preponderance of the evidence, that return of the minor to the minor's parent would create a substantial risk of detriment to the minor's physical or emotional well-being, the minor may not be returned to the

[parent's] custody." *Id.* § 78A-6-314(2)(b). Furthermore, in making that determination, it is prima facie evidence that the return of a child would create a substantial risk of detriment if a parent fails to meet the goals of the court-approved service plan. *See id.* § 78A-6-314(2)(c).

¶5 Although Mother asserts that the juvenile court was required to make a "substantial risk" assessment, we agree with the juvenile court that the standards identified in the statute are really the same inquiry. The ultimate determination is whether the child may be safely returned. *See id.* § 78A-6-314(2)(a). A consideration in making this determination is whether the return to the parent's custody would create a substantial risk of detriment to the child. *See id.* § 78A-6-314(2)(b). The juvenile court found that Mother had failed to meet the goals of the reunification plan because Mother had not internalized the concepts and information provided, which constituted prima facie evidence that the return of the child would create a substantial risk of detriment. *See id.* § 78A-6-314(2)(c). Therefore, the child could not be safely returned to Mother's custody. The juvenile court applied the correct standards in making the ultimate finding required under statute.

¶6 Mother also asserts that the juvenile court erred in accepting the testimony of two life coaches because they were not qualified as expert witnesses.[1] Mother filed a post-judgment motion to strike the testimony as improper under rule 702 of the Utah Rules of Evidence and under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993). However, the life coaches were not expert witnesses. Rather, the life coaches provided lay opinion testimony based on their direct observations as permitted under rule 701 of the Utah Rules of Evidence. Accordingly, rule 702 and *Daubert* do not apply.[2]

---

[1]Mother's counsel did not object to the testimony at the permanency hearing, so this issue was arguably waived. However, because the juvenile court addressed the issue in the postjudgment order, we address it here. *See Estate of Covington v. Josephson*, 888 P.2d 675, 678 n.5 (Utah Ct. App. 1994).

[2]Mother also asserts that the life coaches gave inappropriate testimony regarding her religion. However, it is clear that the juvenile court did not give weight to that testimony, noting that it merely reflected a difference of opinion. The juvenile court based its findings on Mother's conduct, not her religion.

¶7    Mother raises other issues in her petition. These issues are without merit, and we decline to address them.[3] *See State v. Carter*, 776 P.2d 886, 888 (Utah 1989) ("[T]his court need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal. Rather it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court.").

¶8    Affirmed.

_____
Carolyn B. McHugh,
Presiding Judge

_____
J. Frederic Voros Jr.,
Associate Presiding Judge

_____
Gregory K. Orme, Judge

---

[3]To the extent that Mother raises evidentiary issues, this court is precluded from reweighing the evidence where there is a foundation for the juvenile court's findings. *See In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. Additionally, Mother provided only a single transcript, precluding review of the proceedings at the multiple additional hearings in this case. *See State v. Miller*, 718 P.2d 403, 405 (Utah 1986) (per curiam) (stating that "in the face of an inadequate record on appeal, [we] must assume the regularity of the proceedings below").