2014 UT App 296

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
JUAN OCHOA,
Defendant and Appellant.

Memorandum Decision
No. 20130042-CA
Filed December 18, 2014

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 111904845

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and Ryan D. Tenney, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN
concurred.

DAVIS, Judge:

¶1　Juan Ochoa appeals his convictions of attempted aggravated
murder, a first degree felony, *see* Utah Code Ann. § 76-5-202
(LexisNexis Supp. 2014), and possession of items prohibited in a
correctional facility, a second degree felony, *see id.* § 76-8-311.3(4)(c)
(2012). Ochoa's convictions arose from an incident in which Ochoa
attacked his cellmate with a shank while incarcerated at the Utah
State Prison. Ochoa challenges his convictions on the ground that
he received ineffective assistance of counsel at trial because his trial
counsel failed to object to several aspects of the jury instructions.
We affirm.

¶2    To establish ineffective assistance of counsel, "a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a reasonable probability that the outcome of the trial would have been different." *Myers v. State*, 2004 UT 31, ¶ 20, 94 P.3d 211 (citation and internal quotation marks omitted). Because we conclude that Ochoa has failed to establish that any error in the jury instructions was prejudicial, we reject his ineffective assistance claim. *See generally Archuleta v. Galetka*, 2011 UT 73, ¶ 41, 267 P.3d 232 ("In the event it is 'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,' we will do so without analyzing whether counsel's performance was professionally unreasonable." (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984))).

¶3    Ochoa first argues that the instructions impermissibly directed the jury to find that he was an inmate in a correctional facility, an element of each of the crimes with which he was charged. Ochoa maintains that regardless of how apparent an element may seem, the jury must be permitted to make a factual determination on every element of a crime and counsel performs ineffectively by not objecting when an instruction removes an element from the jury's consideration. Accordingly, Ochoa objects to the jury instructions stating that "the Utah State Prison is a correctional facility for purposes of these instructions" and that "Ochoa was a prisoner in the Utah State Prison, a correctional facility, at the time of the offenses charged by the State." Although Ochoa does not argue that there was any basis for the jury to have determined that he was *not* a prisoner in a correctional facility, he asserts that the court committed structural error by removing an element of the charged offenses from the jury's consideration. *See generally State v. Duran*, 2011 UT App 254, ¶ 21, 262 P.3d 468 (explaining that structural errors are errors that "are so intrinsically harmful as to require automatic reversal" (citation and internal quotation marks omitted)).

¶4    In support of his position, Ochoa relies on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), which held that an aggravating factor

that increases the penalty for an offense constitutes an element that must be found beyond a reasonable doubt by a jury. *Id.* at 2161–62. However, *Alleyne* does not suggest that a failure to submit such an element to the jury is structural error, and indeed, the Supreme Court has consistently held the opposite. *See, e.g., Washington v. Recuenco*, 548 U.S. 212, 222 (2006) ("[F]ailure to submit an element to the jury[] is not structural error."); *Neder v. United States*, 527 U.S. 1, 8–10 (1999); *accord Duran*, 2011 UT App 254, ¶¶ 20–26; *see also United States v. Cotton*, 535 U.S. 625, 632 (2002). Thus, even if we were to assume that counsel performed deficiently by not objecting to the instruction that Ochoa was a prisoner in a correctional facility,[1] Ochoa must still demonstrate that counsel's failure was prejudicial.

¶5    A reviewing court attempting to determine whether the omission of an element from a jury instruction is harmless error "asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element. If the answer to that question is 'no,' holding the error harmless does not reflec[t] a denigration of the constitutional rights involved." *Neder*, 527 U.S. at 19 (alteration in original) (citation and internal quotation marks omitted). At trial, the State introduced evidence indicating that Ochoa was an inmate in the "serious threat group" section of the Utah State Prison. Ochoa did not contest this evidence at trial, introduce any contradictory evidence, or otherwise make any attempt to argue that he was not a prisoner in a correctional facility.[2] He has therefore failed to demonstrate that

---

1. Although we dispose of this issue on prejudice grounds, we also observe that the decision to stipulate to an element of an offense does not necessarily constitute deficient performance. *See, e.g., State v. Marble*, 2007 UT App 82, ¶ 21, 157 P.3d 371 (holding that it was reasonable trial strategy for counsel to stipulate to the fact that the defendant held a position of special trust over his daughter, the victim, for purposes of an aggravated sexual abuse charge).

2. On appeal, Ochoa does argue that "the Utah State Prison" is not "a correctional facility," because there was no evidence that it was

(continued...)

there was any basis on which the jury could have found that these elements were not established. Accordingly, his ineffective assistance claim with respect to this instruction fails. *Cf. Duran*, 2011 UT App 254, ¶¶ 27–32 (holding that where an element not

---

2. (...continued)

a "juvenile detention facility." The Utah Code defines "correctional facility" as

> (i) any facility operated by or contracting with the Department of Corrections to house offenders in either a secure or nonsecure setting;
> (ii) any facility operated by a municipality or a county to house or detain criminal offenders;
> (iii) any juvenile detention facility; and
> (iv) any building or grounds appurtenant to the facility or lands granted to the state, municipality, or county for use as a correctional facility.

Utah Code Ann. § 76-8-311.3(1)(c) (LexisNexis 2012). Ochoa asserts that the statute's use of the word "and" indicates a requirement that a facility meet all four of the listed definitions in order to be considered a correctional facility. This reading of the statute is erroneous. The statute defines "correctional facility" to mean any of the four listed types of facilities. The repetition of various forms of the phrase "any facility" within each subsection indicates that each subsection identifies a distinct type of facility. Had the legislature intended to identify multiple characteristics that a single facility must exhibit in order to be a correctional facility, it would have put the phrase "any facility" before the listed elements (i.e., a correctional facility is any facility that (i) is operated by or contracting with the Department of Corrections to house offenders in either a secure or nonsecure setting; (ii) is operated by a municipality or a county to house or detain criminal offenders; (iii) contains juvenile detention facilities; and (iv) is appurtenant to the facility or lands granted to the state, municipality, or county for use as a correctional facility). Furthermore, the definition Ochoa prescribes is unreasonable because each of the four items clearly identifies distinct types of facilities with different purposes, and few, if any, correctional facilities will ever fall within all four categories.

tried to the jury involved only legal disputes and not factual disputes, any error in taking the issue from the jury was harmless beyond a reasonable doubt).

¶6    Ochoa next argues that the instructions on the charge for possession of items prohibited in a correctional facility omitted the mens rea element. The jury was instructed that in order to convict Ochoa of this charge, it must find beyond a reasonable doubt "[t]hat on or about April 19, 2011, in Salt Lake County, State of Utah: 1. The defendant, a prisoner; 2. Possessed a dangerous weapon; 3. While incarcerated at the Utah State Prison." The jury was not instructed on the mental state required for this offense. Although the State concedes that Ochoa's counsel performed deficiently by failing to object to this instruction, it maintains that the error was harmless.

¶7    Once again, the record does not contain "evidence that could rationally lead to a contrary finding with respect to the omitted element." *See Neder*, 527 U.S. at 19. Because the statute does not identify a mens rea for this crime, the default mens rea of "intent, knowledge, or recklessness" applies. *See* Utah Code Ann. § 76-2-102 (LexisNexis 2012) ("Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility."). However, there was no rational basis for the jury to have concluded that Ochoa possessed the shank and attacked his cellmate with it but did not do so intentionally, knowingly, or recklessly. Furthermore, the evidence that Ochoa used a shank to repeatedly stab his cellmate was strong—no one else was in the cell with Ochoa and the cellmate when the attack occurred, the cellmate sustained multiple stab wounds, and Ochoa sustained no injuries. Thus, we are not convinced that "there is a reasonable probability that the outcome of the trial would have been different" had counsel objected to this jury instruction. *See Myers v. State*, 2004 UT 31, ¶ 20, 94 P.3d 211 (citation and internal quotation marks omitted).

¶8    Finally, Ochoa argues that the mens rea element of the charge for attempted aggravated murder was not adequately defined. The jury was instructed on attempt as follows:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for the commission of the offense, he engages in conduct constituting a substantial step toward commission of the offense. Conduct does not constitute a substantial step unless it is strongly corroborative of the actor's intent to commit the offense.

This instruction mirrors the language of a superseded version of the attempt statute. *See* Utah Code Ann. § 76-4-101(1)–(2) (LexisNexis 2003). The current version replaces "acting with the kind of culpability otherwise required for the commission of the offense" with "(i) intends to commit the crime; or (ii) when causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result." Act of May 3, 2004, ch. 154, § 1, 2004 Utah Laws 625; *see also* Utah Code Ann. § 76-4-101 (2012).

¶9    While the attempt instruction given to the jury does not reflect the mens rea identified in the current version of the Utah Code, the attempted aggravated murder instruction informed the jury that in order to convict Ochoa of attempted aggravated murder it must find that he "[*i*]*ntentionally* attempted to cause the death of" his cellmate "while confined as a prisoner in a correctional institution." (Emphasis added.) Ochoa asserts that the use of the word "intentionally" in this instruction was insufficient to cure the deficiency in the attempt instruction. In order to accurately instruct the jury, Ochoa asserts, the words "intentionally" and "attempted" should have been reversed so that the instruction read "attempted to intentionally cause the death." He argues that the instructions, as worded, permitted the jury to convict Ochoa for intentionally stabbing the cellmate, even if he did not have the intent to kill.

¶10    We are not convinced that the jury was misled by the instructions under the circumstances of this case.[3] Our supreme court has recognized that even where there is ambiguity in the meaning of a jury instruction, "commonsense understanding of the instructions in the light of all that has taken place at the trial [is] likely to prevail over technical hairsplitting" when the jury deliberates. *State v. Hutchings*, 2012 UT 50, ¶ 25, 285 P.3d 1183. In this case, the jury was explicitly informed in both opening and closing arguments by both the prosecutor and defense counsel that it needed to find that Ochoa had the "intent to kill" his cellmate in order to convict him of attempted aggravated murder. *Cf. id.* (concluding that an ambiguous jury instruction was not prejudicial because "[t]he elements required to convict [the defendant] of aggravated assault were correctly argued to the jury with the correct mental states throughout the trial proceedings"). Furthermore, defense counsel explicitly urged the jury to acquit Ochoa on the theory that Ochoa intended only to injure his cellmate, not to kill him. It was never suggested to the jury at trial

---

3. Nor are we persuaded that the language Ochoa claims the jury instruction should have used—"attempted to intentionally cause the death"—would have clarified the mens rea element of the attempted murder jury instruction. This is because it would have required the jury to find that the defendant had attempted not only a result ("cause the death") but a mens rea ("intentionally"). By its nature, a criminal mens rea must describe the state of mind that accompanies a proscribed act. In this case, the proscribed act is not causing death; causing death was only a desired result. Rather, the proscribed act was the assault with the shank, and the "attempt" mens rea required that act to have been done with a specific purpose, i.e., to cause the victim's death. Thus, it might have been clearer to instruct the jury that Ochoa had to have acted *with the intent to cause* the victim's death, but Ochoa's proposed instruction seems to miss the point by requiring that Ochoa have attempted not only an unrealized result but also a mens rea that did not actually occur. The instruction given—"[i]ntentionally attempted to cause the death"—although not precise, more effectively conveys the mens rea requirement of the charged crime.

that it could convict Ochoa of the attempted murder charge based on a finding that Ochoa merely intended to injure his cellmate. Moreover, the cellmate's testimony that Ochoa said, "'I gotta go, die, kill you,'" while attacking the cellmate was strong evidence of Ochoa's intent, as was evidence indicating that the cellmate suffered life-threatening injuries. Thus, we are not convinced that any error in the jury instructions relating to the attempted aggravated murder charge affected the outcome of the case.

¶11     Because we conclude that any errors committed by counsel did not prejudice Ochoa, we reject his ineffective assistance of counsel claims. Accordingly, we affirm Ochoa's convictions.

———————