2017 UT App 204

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TERRY LEE WILKINSON,
Appellant.

Opinion
No. 20140815-CA
Filed November 9, 2017

Third District Court, Salt Lake Department
The Honorable Katie Bernards-Goodman
No. 141902977

Ronald Fujino, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
MICHELE M. CHRISTIANSEN and DAVID N. MORTENSEN concurred.

ORME, Judge:

¶1     Defendant Terry Lee Wilkinson was convicted of aggravated assault after charging at and hitting his victim with an electric drill, which he swung from its power cord. He appeals his conviction, arguing that the evidence against him was insufficient to support the jury's verdict and that his trial counsel provided ineffective assistance. We affirm his conviction.

BACKGROUND[1]

¶2      On the morning of March 15, 2014, the father (Victim) of one of Defendant's roommates parked his new car in front of Defendant's residence. Victim's daughter, who had been living with Defendant for a time, had asked Victim to help her move because she "had to get out" of the house. Although Victim suffered from chronic lower-back pain and could not easily walk without the use of a cane, his new car was well-suited for the task, and he agreed to help. Finding that his daughter was still inside packing when he arrived, Victim entered the residence.

¶3      Upon stepping into the front room, Victim discovered that "[t]here was a lot of ruckus going on." Defendant "kept trying to pick a fight" with Victim's daughter, accusing her of packing things that belonged to him. Twice Victim witnessed Defendant "lay his hands on" his daughter: once, when Defendant grabbed a pot from out of the daughter's hand, and then again when Defendant "pushed her" after "tussling over" a box the daughter had removed from a closet. After demanding that Defendant "keep his hands off [his] daughter," Victim urged her to "just quit, move on," and "get out" of the house.

¶4      Once her belongings had finally been packed, Victim and his daughter began moving boxes outside and loading them into Victim's vehicle. Defendant, however, did not relent; he insisted that the two allow him to search through each box before loading it into the car. Ignoring these demands, the daughter loaded one of the boxes into the rear of the vehicle, sending Defendant into a rage. Turning to Victim, he shouted that he "was going to see what was in that box [even] if he had to tear the car apart." Victim responded, "You're not touching my car."

---

1. "On appeal from a criminal conviction, we recite the facts from the record in the light most favorable to the jury's verdict." *State v. Pham*, 2015 UT App 233, ¶ 2, 359 P.3d 1284.

¶5     At this point Defendant came "flying at" Victim, and the two began exchanging "colorful" language. Their voices grew louder, and after a short time Victim sensed that Defendant was on the verge of physical violence. Fearing for his safety, Victim raised his cane over his shoulder to "stop [Defendant] in his tracks." Defendant then retreated into his house, "cussing and fussing the whole" way.

¶6     Believing the matter settled, Victim put down his cane and began rearranging boxes in the car. A few minutes passed, and his daughter returned to the house to retrieve more boxes. That is when Victim, who was still arranging boxes in his car, heard a "thump, thump" sound coming from behind him. Victim would later testify that "when [he] turned [his] head[, he] caught [Defendant] out of the corner of [his] eye and he was swinging this thing." As Victim turned to face him, Defendant bellowed, "Did you think I wasn't going to come back?"

¶7     Initially perceiving the swinging object to be a boot, Victim raised an arm to shield himself from what he believed would likely be a painful but survivable blow. When the object connected with his arm, however, he "quickly discovered it was no boot." Upon recognizing that Defendant was in fact swinging an electric drill from its power cord, Victim began scrambling backward, "do[ing] whatever [he] could to save his life."

¶8     Running "sideways" so as to keep both eyes on the drill, Victim lost his balance and fell to the ground. Defendant did not let up. Even after Victim had curled into the fetal position, Defendant continued swinging the drill at Defendant, forcing Victim to roll frantically from side to side. At one point Victim managed to get to his feet, only to fall again. Throughout the attack, Defendant shouted, "I'm going to kill you!"

¶9     Finally, after nearly five minutes, Defendant relented. By then Victim had sustained several minor injuries, including a

gash on his arm caused by the "stub" of the drill bit.[2] Victim had also cut his hand after falling on some gravel. As Defendant made his way back to the house, Victim called 911. The paramedics arrived soon after that, and they were accompanied by four police officers, who placed Defendant under arrest.

¶10 Defendant was charged with third-degree-felony aggravated assault, and the case proceeded to trial. After the State rested, Defendant moved for a directed verdict, arguing that the State failed to satisfy its evidentiary burden regarding whether Defendant's swinging drill qualified as a "dangerous weapon" as the term is used in the applicable statute. *See* Utah Code Ann. § 76-1-601(5)(a) (LexisNexis 2012). The district court denied Defendant's motion, concluding that on the evidence presented the jury could reasonably find that the drill "could [have] crack[ed] [Victim's] skull." Defendant then submitted a proposed jury instruction to the court on a lesser included offense of class B misdemeanor assault, which differed from the State's felony charge by omitting the aggravating "dangerous weapon" element. The State took no exception to Defendant's proposed instruction.

¶11 At the close of evidence, the district court submitted instructions to the jury, which included an instruction on the aggravated assault charge as well as an instruction on class B misdemeanor assault. The aggravated assault instruction read as follows:

> Before you can convict the defendant . . . of the offense of Aggravated Assault[,] . . . you must unanimously find from all of the evidence and

---

2. The sharp end of the bit had been blunted before coming into contact with Victim's arm—apparently because the drill had smashed into the ground multiple times while Defendant was rushing toward Victim from his front door.

> beyond a reasonable doubt each and every one of the following elements . . . :
>
> 1. the defendant . . . ,
>
> 2. committed an assault, as defined in Utah Code 76-5-102,[3] against [Victim],
>
> 3. used a dangerous weapon, and
>
> 4. acted intentionally, knowingly, or recklessly.

This instruction was accompanied by an additional instruction on the contents of section 76-5-102, as well as an instruction defining the terms "intentionally," "knowingly," and "recklessly." The court's misdemeanor assault instruction, in turn, read this way:

> Before you can convict [Defendant] . . . of the lesser included . . . offense of [Assault,] you must find from the evidence, beyond a reasonable doubt, each of the following elements:
>
> . . . . The defendant . . . either[:]
>
> a. Attempted with unlawful force or violence,
>
> b. To do bodily injury to another; OR

---

3. *See* Utah Code Ann. § 76-5-102 (LexisNexis 2012). Section 76-5-102 was amended on May 12, 2015. In this opinion we cite the statute's previous iteration, as that was the version in effect at the time of Defendant's conduct. *See State v. Clark*, 2011 UT 23, ¶¶ 13–14, 251 P.3d 829.

    c. Committed an act with unlawful force or violence[,]

    d. That caused bodily injury to another or created a substantial risk of bodily injury to another.

In addition, the court instructed the jury that "[a] person cannot be found guilty of a criminal offense unless that person's conduct is prohibited by law, AND at the time the conduct occurred, the defendant demonstrated a particular mental state specified by law."

¶12    Finally, the court instructed the jury on the definition of a "dangerous weapon." Quoting the language of the Utah Code, the instruction explained that a "[d]angerous weapon means . . . [a]ny item capable of causing death or serious bodily injury[.]" *See* Utah Code Ann. § 76-1-601(5)(a). In a separate instruction, the court further defined "serious bodily injury" and distinguished it from mere "bodily injury." "Serious bodily injury," it instructed, "means bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." The court instructed that "bodily injury," on the other hand, "means physical pain, illness or an impairment of physical condition." In giving these instructions, the court once again quoted the language of the applicable statute. *See id.* § 76-1-601(3), (11).

¶13    The jury returned a guilty verdict on the charge of aggravated assault, and Defendant was later sentenced to an indeterminate prison term of zero to five years. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

¶14    Defendant raises two primary issues on appeal. First, he contends that the State produced insufficient evidence at trial to

support the jury's verdict. Ordinarily, when a defendant challenges the jury's verdict on insufficiency-of-the-evidence grounds, "[w]e reverse only if . . . we conclude that the evidence is insufficient to support the verdict" when "viewing the evidence in the light most favorable to the prevailing party." *Brewer v. Denver & Rio Grande W. R.R.*, 2001 UT 77, ¶ 33, 31 P.3d 557 (citation and internal quotation marks omitted). But because "claims not raised before the trial court may not be raised on appeal," an insufficiency of the evidence claim that was not placed before the district court must fail on appeal unless "a defendant can demonstrate that exceptional circumstances exist or plain error occurred." *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citation and internal quotation marks omitted).

¶15 Second, Defendant contends that his trial counsel's performance was so deficient that he was deprived of his constitutional right to the effective assistance of counsel. An ineffective assistance of counsel claim, when raised for the first time on appeal, presents a question of law. *See State v. Heywood*, 2015 UT App 191, ¶ 16, 357 P.3d 565.

ANALYSIS

I. Insufficiency of the Evidence

¶16 Defendant argues that the evidence presented at trial was insufficient to support the verdict. Because Defendant failed to preserve his claim, we reject it.

¶17 The rule that litigants may not raise a trial court's claimed error for the first time on appeal serves two important policies. First, "in the interest of orderly procedure, the trial court ought to be given an opportunity to address a claimed error and, if appropriate, correct it." *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989). "Second, a defendant should not be permitted to forego making an objection . . . [to] enhance[e] . . . [the] chances of acquittal and then, if that strategy fails," ask the appellate court

to reverse. *State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346 (citation and internal quotation marks omitted). To these ends, we have consistently held that "the preservation rule applies to every claim . . . unless a defendant can demonstrate that 'exceptional circumstances' exist or 'plain error' occurred." *Id.*

¶18 The whole of Defendant's argument on his insufficiency of the evidence claim is devoted to supporting his contention that "[Victim's] lay person testimony constituted an inadequate basis to prove serious bodily injury." But Defendant did not raise this contention in his motion for a directed verdict, in any post-trial motion, or in any other way. Because Defendant does not suggest that an exception to the preservation rule applies, his first claim of error fails regardless of its substantive merit. *See State v. Pledger*, 896 P.2d 1226, 1229 n.5 (Utah 1995) ("Because [the defendant] does not argue that 'exceptional circumstances' or 'plain error' justifies a review of the issue, we decline to consider it on appeal.").

## II. Ineffective Assistance of Counsel

¶19 Defendant asserts that his trial counsel erred in three ways. First, Defendant argues that competent counsel would have objected to the district court's "dangerous weapon" instruction on the ground it was unconstitutionally vague. Second, he contends that his trial counsel rendered ineffective assistance "when he failed to request a lesser included class A [misdemeanor] assault instruction." Finally, Defendant maintains that his counsel performed deficiently by failing to object to the court's instruction on class B misdemeanor assault, as the instruction did not include a mens rea element. With respect to each of these claimed errors, we conclude that Defendant has failed to carry his burden on appeal.

¶20 "To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's deficient performance there is a

reasonable probability that the outcome . . . would have been different." *Myers v. State*, 2004 UT 31, ¶ 20, 94 P.3d 211 (citation and internal quotation marks omitted). *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). When applying this test, the court must bear in mind "'the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Myers*, 2004 UT 31, ¶ 20 (quoting *State v. Templin*, 805 P.2d 182, 186 (Utah 1990)). Put another way, "'the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Templin*, 805 P.2d at 186).

## A.    The "Dangerous Weapon" Instruction

¶21    We begin with Defendant's contention that his trial counsel performed deficiently by failing to object to the court's "dangerous weapon" instruction as being unconstitutionally vague. "To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Skilling v. United States*, 561 U.S. 358, 402–03 (2010) (brackets in original) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). Defendant maintains that, given the definition contained in the court's instruction, ordinary jurors could not be expected to distinguish a "dangerous weapon" from a "non-dangerous weapon," and therefore it was impossible for the jury to determine whether Defendant's swinging drill satisfied the aggravating element that distinguishes felony from misdemeanor assault. Thus, Defendant argues, the court's instruction was "void for vagueness," and it was therefore impossible for the jury to convict him of the aggravated charge without depriving him of due process.

¶22    We note that the void-for-vagueness doctrine is typically raised in a challenge to a "penal statute[]," not a jury instruction, *see id.* at 402 (articulating the due process requirement that a "penal statute" be sufficiently "definit[e]"), and it is unclear why

Defendant has chosen to attack the court's "dangerous weapon" instruction rather than the statute that it quotes. Regardless, whether aimed at the instruction or the statute, the argument would have been unavailing in the district court, and thus Defendant's trial counsel did not perform deficiently by failing to assert it. *See State v. Bond*, 2015 UT 88, ¶ 63, 361 P.3d 104 ("[T]he decision not to pursue a futile motion is almost always a sound trial strategy.") (citation and internal quotation marks omitted).

¶23  Defendant maintains that the court's instruction could not have illuminated for the jury the difference between a "dangerous weapon" and a "non-dangerous weapon" because, at least in theory, "any and all items like pens or pencils are . . . 'capable of causing'" serious bodily injury. Therefore, he argues, "[t]he dangerous weapon definition improperly leaves no distinction or limitation" between felony and misdemeanor assault. Insofar as he is challenging section 76-1-601(5)(a) as unconstitutionally vague, Defendant bears the burden of demonstrating its unconstitutionality "beyond a reasonable doubt." *State v. Krueger*, 1999 UT App 54, ¶ 21, 975 P.2d 489.

¶24  For a statute to be unconstitutionally vague, it must be "vague in all its applications." *Greenwood v. City of North Salt Lake*, 817 P.2d 816, 819 (Utah 1991). "A statute that is clear as applied to a particular complainant cannot be considered impermissibly vague in all of its applications and thus will necessarily survive a facial vagueness challenge." *State v. MacGuire*, 2004 UT 4, ¶ 12, 84 P.3d 1171. Here, the district court instructed the jury that a "dangerous weapon" is an item "capable of causing . . . serious bodily injury." It further instructed that "serious bodily injury" is to be distinguished from mere "bodily injury" in that it involves "protracted loss or impairment of the function of any bodily member or organ," not simply "physical pain." The jury then applied the court's instructions to facts involving, not hypothetical "pens or pencils," but an electric drill, which Defendant swung through the air like a chain mace while charging at his victim. Given the

obvious risks created by Defendant's conduct, we have no trouble concluding that an ordinary juror could reasonably find that Defendant's swinging drill fit squarely within the court's "dangerous weapon" definition. Accordingly, since Defendant's vagueness challenge fails as applied to the instant facts, his facial challenge necessarily fails as well. *See MacGuire*, 2004 UT 4, ¶ 12. *See also State v. Yazzie*, 2017 UT App 138, ¶ 13, 402 P.3d 165 ("An item will be considered a dangerous weapon if, based upon its actual use, subjectively intended use, or objectively understood use, it can cause death or serious bodily injury.") (citation and internal quotation marks omitted).

B.     The Second Lesser-Included-Offense Instruction

¶25     Defendant next contends that his trial counsel performed deficiently by failing to request a second lesser-included-offense instruction, specifically an instruction on class A misdemeanor assault. Because Defendant has failed to demonstrate that his trial counsel's omission in this regard could not be considered "sound trial strategy," we conclude that he has not shown that his counsel's performance fell "below an objective standard of reasonableness." *See Myers v. State*, 2004 UT 31, ¶ 20, 94 P.3d 211.

¶26     By faulting his trial counsel for failing to request an instruction on the intermediate degree of assault between the State's felony charge and class B misdemeanor assault, Defendant apparently contends that an attorney for a criminal defendant performs deficiently by failing to request every lesser included offense available. Defendant cites no authority for this rule, and our research has revealed none. Accordingly, Defendant has failed to overcome the "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance." *See id.*

¶27     Indeed, under the circumstances, Defendant's trial counsel probably made the right call. The Utah Code elevates a misdemeanor assault from a class B to a class A misdemeanor if the defendant "causes substantial bodily injury." Utah Code

Ann. § 76-5-102(3)(a) (LexisNexis 2012). Further, the Utah Code defines "substantial bodily injury" as "bodily injury, not amounting to serious bodily injury, that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ." *Id.* § 76-1-601(12). At trial, both parties essentially conceded that Defendant inflicted only minor injuries on Victim; the primary factual issue was whether Defendant's drill constituted a "dangerous weapon," which has no bearing on the question of whether Defendant's assault amounts to a class A or a class B misdemeanor. Thus, since the evidence was consistent with only the less serious of the two misdemeanor offenses, requesting an instruction on the more serious offense would likely have had no effect other than to confuse the jury.

¶28 Moreover, we have previously held that where the evidence is such that defense counsel believes the jury is likely to convict the defendant of *some* crime, it may well be sound trial strategy "to provide the jury with an alternative that would work to [the defendant's] advantage." *See State v. Binkerd*, 2013 UT App 216, ¶ 32, 310 P.3d 755. Given the outrageous nature of Defendant's conduct, it is safe to assume that the jury was likely to convict him of some crime, even if it ultimately concluded that the evidence did not support third-degree-felony aggravated assault. Under these circumstances, competent defense counsel could reasonably conclude that Defendant's best option was to give the jury the opportunity to convict Defendant of the least serious crime possible rather than offering a wider range of lesser included offenses.

C.    The Omitted Mens Rea Element

¶29 Finally, Defendant contends that his trial counsel was ineffective for failing to object to the court's instruction on the lesser included offense of class B misdemeanor assault, which failed to specify the mens rea element of the offense. Because the instruction submitted to the jury was the very instruction proposed by Defendant's counsel when he requested that such

an instruction be given, we assume that what Defendant intends to argue on appeal is that his trial counsel performed deficiently in proposing a flawed instruction to the court in the first instance. Under different circumstances, this flaw might well have merited reversal. Nevertheless, given that the jury ultimately convicted Defendant of felony aggravated assault, not misdemeanor assault, we are convinced that even if the mental state were included in the lesser-included-offense instruction there is no "reasonable probability that the outcome . . . would have been different." *See Myers*, 2004 UT 31, ¶ 20.

¶30   If the jury had convicted Defendant of misdemeanor assault, without having been instructed on the applicable mens rea, we agree that there would indeed be a problem with the verdict. As Defendant correctly observes, "due process mandates that the prosecution prove every element of the charged crime beyond a reasonable doubt." *State v. Herrera*, 895 P.2d 359, 368 (Utah 1995). Because the court's instruction on misdemeanor assault failed to include the mens rea element of the crime, it would have been incapable of supporting a conviction. Furthermore, the court's separate instruction explaining that every crime has both an actus reus and a mens rea element would have been insufficient to remedy the error, as it did not specify the particular mental state that the jury needed to find before convicting Defendant of misdemeanor assault.

¶31   The fact remains, however, that Defendant was not convicted of misdemeanor assault; he was convicted of third-degree-felony aggravated assault. And the court's instructions as to that crime were proper. In addition to instructing the jury that it must find that the swinging drill was a "dangerous weapon," the court's aggravated assault instruction made clear that the jury could not find Defendant guilty of that crime unless it also found, beyond a reasonable doubt, that when swinging the drill Defendant acted "intentionally, knowingly, or recklessly." Since the jury ultimately found Defendant guilty of aggravated

assault, we are satisfied that it also found he acted[4] with one of those three mental states.[5] We therefore conclude that trial

---

4. Defendant points out that, in addition to the problem of the omitted mens rea element, the actus reus elements specified in Defendant's requested lesser-included-offense instruction were slightly different from the actus reus elements specified in the separate instruction given to the jury on the elements of assault, which supplemented the instruction on the aggravated assault charge. The court's instruction on assault, which tracked the language of section 76-5-102 of the Utah Code, provided that a person can commit assault by making "a threat, accompanied by a show of immediate force or violence, to do bodily injury to another." The instruction on the lesser included offense of class B misdemeanor assault, on the other hand, did not include this threat variant. Defendant fails to articulate how he was prejudiced by this small discrepancy in the misdemeanor instruction. Regardless, we conclude that he was not prejudiced for the same reason that he was not prejudiced by the omitted mental state: the jury ultimately convicted him of aggravated assault, a felony, and any problems in the misdemeanor instruction simply did not matter given that conviction.

5. Defendant further points out that the aggravated assault instruction informed the jury that, in addition to finding he used a "dangerous weapon," the jury needed to find that he committed the crime of simple assault before it could find him guilty of aggravated assault. He then observes, correctly, that the supplemental instruction on the elements of simple assault, like its separate instruction on the lesser included offense of class B misdemeanor assault, failed to specify the mens rea of the crime. He therefore argues that because the aggravated assault instruction incorporated by reference the contents of the separate instruction on simple assault, the aggravated assault instruction was flawed. But Defendant's argument ignores the fact that the aggravated assault instruction contained its own mens rea

(continued…)

counsel's failure to object to the faulty misdemeanor assault instruction (or, more precisely, to have improvidently requested the instruction) did not have an effect on the outcome of Defendant's trial and thus was not prejudicial.

## CONCLUSION

¶32    For the foregoing reasons, we conclude that Defendant has not preserved his challenge to the sufficiency of the evidence supporting his conviction. We further conclude that Defendant's trial counsel did not provide ineffective assistance. We therefore uphold Defendant's conviction.

¶33    Affirmed.

_____

(…continued)
provision and specified that Defendant could not have committed aggravated assault without acting "intentionally, knowingly, or recklessly." Accordingly, we reject this argument.